NEW YORK PETROLEUM CORPORA-
TION, Plaintiff-Appellee,

v.

ASHLAND OIL, INC. and Koch Indus-
tries, Inc., Defendants-Appellants,

ASHLAND OIL, INC. and Koch Indus-
tries, Inc., Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF
ENERGY, Defendant-Appellee.

No. 5–100.

Temporary Emergency Court of Appeals.

Argued Nov. 8, 1984.

Decided Jan. 22, 1985.

Rehearing and Rehearing En Banc
Denied March 4, 1985.

Glenn Gates Taylor, of Heidelberg, Woodliff & Franks, argued, with whom on the brief was Kenneth I. Franks of the same firm, Jackson, Miss., for appellee New York Petroleum Corp.

Before GRANT, PECK and MAXWELL, Judges.

JOHN W. PECK, Judge:

## I. FACTS

This case stems from overcharges which New York Petroleum (New York) charged its crude oil customers between 1973 and 1975, in violation of then existing price regulations. New York incorrectly listed certain properties in Louisiana and Mississippi which it operated for the working interest owners as "stripper well leases" (properties which produce very little crude oil) and hence are exempt from price ceilings. On July 29, 1977, the Deputy Regional Administrator of Region VI of the Federal Energy Administration, the predecessor agency to the Department of Energy (DOE), issued a remedial order directing New York to pay $283,140.43 in restitution to Ashland Oil Company (Ashland) and Koch Oil Company (Koch). New York appealed the order to the newly-created DOE's Office of Hearings and Appeals (OHA), which reduced the amount of restitution but otherwise affirmed the remedial order.[1] *New York Petroleum Corp.*, 3 DOE (CCH Energy Mgmt.) ¶ 80,111 (January 19, 1979). On March 7, 1979, New York filed suit against DOE and the Secretary of Energy in the United States District Court for the Southern District of Mississippi seeking to bar enforcement of the orders. On March 26, 1979, New York filed an amended complaint, this time adding Ashland and Koch as defendants. DOE then counterclaimed against New York seeking enforcement of the order.

During the latter part of 1981, New York and DOE began settlement negotiations. On March 23, 1982, DOE and New York

Patricia N. Blair, of Ginsburg, Feldman & Bress, Washington, D.C., argued, with whom on the brief were Fred W. Drogula and Linda B. Blair, Washington, D.C., of the same firm, and John T. Armstrong, Jr., Armstrong & Hoffman, Hazlehurst, Miss., for appellants.

Thomas C. Newkirk, U.S. Dept. of Energy, Washington, D.C., argued, with whom on the brief were David A. Engels and Ellen P. Rosenberg-Blatt, Washington, D.C., for appellee U.S. Dept. of Energy.

1. OHA later issued a second ruling, correcting a technical error in the first. *New York Petroleum Corp.*, 3 DOE (CCH Energy Mgmt.) ¶ 82,577 Supplemental Order (May 30, 1979).

reached a settlement, under which New York would pay $160,000 to DOE, which ultimately would decide who was entitled to it under the procedures of 10 C.F.R. § 205.280 (Subpart V). DOE felt that payment directly to the first purchasers of the oil would be improper as it had evidence that such purchasers simply passed the overcharges on to their customers and that the DOE Entitlements Program had alleviated their difficulties, so that any additional direct payments to these oil companies would constitute a windfall to them. Ashland and Koch, however, continued to contend that they were entitled to the money. In a hearing on December 9, 1982, a United States Magistrate approved the settlement after adding the specification, on Ashland's and Koch's motion, that DOE would hold the money in escrow for those it ultimately found entitled to it. At the same time, the magistrate ordered that DOE be dismissed from the case. No party appealed the magistrate's decision; accordingly, it became a final order binding on all parties to the action—namely, DOE, New York, Ashland, and Koch. New York then paid the money to DOE, and OHA announced, 49 Fed.Reg. 1130–33 (Jan. 9, 1984) that it would hold hearings to determine who was entitled to the money.

Although Ashland and Koch did not move to participate in these hearings, they did begin to display interest in the dispute, in contrast to their earlier attitude. During the long period in which DOE had sought recovery from New York and had been engaged with New York, first in litigation and then in settlement efforts, Ashland and Koch did nothing. As their counsel put it, they were content to "let the DOE carry the ball" for them, saving them the expense and effort of seeking a recovery on their own behalf, which they could have done under § 210 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 (note), as incorporated into the Emergency Petroleum Allocation Act of 1973 by 15 U.S.C. § 754(a)(1). Ashland's and Koch's

early apathy in the matter, indeed, was almost total. When New York appealed to OHA to have the remedial order, from which Ashland and Koch stood to benefit, set aside, DOE informed Ashland and Koch of the fact and invited them to participate. Ashland and Koch declined to do so; Ashland's counsel responded, "Ashland does not wish to file any comments in this matter." Even after they became parties in the lawsuit, Ashland and Koch displayed little interest, and engaged in no discovery. Significantly, Ashland and Koch, named by New York as co-defendants, filed no counterclaim against New York, in spite of the availability of the § 210 cause of action, which would have allowed them treble damages and attorneys' fees, neither of which they stood to recover under DOE's remedial order. Ashland and Koch first displayed real interest in the matter after DOE and New York, in March, 1982, reached a settlement without the participation of Ashland and Koch. At this point, Ashland and Koch began sending letters to DOE urging that the money DOE recovered from New York should go to them and not, as the proposed settlement order indicated, to DOE for proceedings to determine its ultimate disposition. Even then, though with full notice that DOE was no longer "carrying the ball" on their behalf, Ashland and Koch did not file their own suit seeking recovery from New York. Ashland and Koch waited until February, 1983, almost four years after they had become parties to the suit, and after DOE and New York had reached a settlement in the suit and obtained final judicial approval for it, before seeking to amend their answer to New York's suit by adding a counterclaim for recovery from New York under § 210's treble damages provisions.[2] The following month, they filed suit against DOE seeking to compel it to enforce the remedial order which DOE had agreed in the judicially-approved settlement with New York not to enforce. This action was consolidated with

---

**2.** Ashland and Koch had, however, previously become involved to the extent of opposing the settlement between DOE and New York, though

they failed, as we have observed, to appeal the order approving the settlement.

New York's suit against Ashland and Koch. On August 24, 1983, Judge William H. Barbour of the United States District Court for the Southern District of Mississippi, entered an order denying Ashland's and Koch's motion for leave to file their counterclaim, dismissing Ashland's and Koch's suit against DOE, and dismissing New York's suit against Ashland and Koch without prejudice. 568 F.Supp. 1231 (D.C.Miss.1983). From this order, Ashland and Koch perfected the present appeal.

This appeal presents three questions:

1) Was Ashland's and Koch's motion for leave to amend their answers, by adding an omitted counterclaim almost four years after they became parties to the suit, properly denied?

2) Is Ashland's and Koch's claim against the DOE barred by failure to exhaust administrative remedies available in the Subpart V proceedings or by the res judicata effect of the earlier settlement order?

3) Was it proper for the district court to enter the dismissal of the action by New York against Ashland and Koch without prejudice?

We address each of these questions in turn.

## II. ARGUMENTS ON APPEAL

### A. The Omitted Counterclaim

Motions to amend pleadings by asserting omitted counterclaims are governed by Rule 13(f) of the Federal Rules of Civil Procedure, which states that "[W]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." It is appellants' contention that the failure to move to amend their answer to assert their counterclaim until almost four years after they became parties to the suit was justified as "excusable neglect." As earlier pointed out in some detail, so long as they expected to receive the money they now seek through the counterclaim as a result of administrative action by DOE, there was no

reason for them to seek the money on their own. Since their position during the earlier stages of the proceeding was identical to that of DOE, it was perfectly reasonable, appellants argue, for them "to let DOE carry the ball," as counsel for Ashland put it. Only when they concluded that DOE would not protect their best interests, Ashland and Koch assert, was there any reason for them to file the counterclaim. Hence, they contend, their neglect in failing to file their counterclaim until their position diverged from that of DOE was excusable.

The leading case on leave to amend pleadings is *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In its opinion in that case, the Court stated:

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman, supra*, 371 U.S. at 182, 83 S.Ct. at 230. Our task, then, is to determine whether the district court had a "justifying reason" for its denial of the motion to assert the omitted counterclaim, or whether, on the other hand, it abused its discretion by denying the motion.

■ The district court found that Ashland and Koch were guilty of undue delay in filing the motion, and that New York would be unduly prejudiced if it were to allow the counterclaim to be asserted at this time. We agree. Appellants' argument that their delay was excused by their decision to rely on DOE to protect their interests is totally without merit. When a party decides to forego taking action in a lawsuit in the expectation that another party will protect its interests, it does so at its peril. Ashland and Koch chose to rely on DOE. Having made that decision, they cannot now escape its consequences, since it is far too late for them to change it without further burdening the other parties and further delaying the resolution of what has already been an extremely protracted affair. Had Ashland and Koch taken a more aggressive stance in this litigation—something DOE invited them to do—prior to the point at which DOE and New York entered settlement negotiations, DOE and New York could have attempted to include them as parties to the settlement negotiations as well. Instead of having become the object of time-consuming and costly appeals, the dispute might long ago have been resolved.

We should note, moreover, that appellants do not seek simply to be put in the position they would have been in had DOE secured enforcement of the remedial order with which appellants were so satisfied. That order would have given Ashland and Koch restitution for the amount lost through overcharges. Ashland and Koch now seek treble damages, and attorneys' fees as well—remedies to which they would not have been entitled under the remedial order. They were aware that these remedies could have been sought, had they chosen to proceed on their own behalf, at the time they allowed DOE to "carry the ball" for them. In other words, Ashland and Koch have known for over six years that

they could not obtain the remedy they now seek without filing a counterclaim. Their inability to obtain this remedy was not affected in the least by DOE's so-called "change of position" in agreeing to the settlement. This fact further undercuts appellants' argument that their prior reliance on DOE to safeguard their interests somehow excused their earlier failure to present their claim.

In short, we are faced with parties which deliberately chose to forego pursuing rights they knew they had. After considerable delay, they now seek to upset a settlement which has already been executed. We cannot consider such actions to represent excusable neglect or to offer no danger of prejudice to the interests of the other parties. Accordingly, we find the district judge did not abuse his discretion by denying Ashland and Koch leave to amend their answer by adding a counterclaim almost four years after the answer was filed.

### B. The action against DOE

■ The second issue is whether appellants' action against DOE is barred by appellants' failure to exhaust their administrative remedies. It is beyond dispute that appellants have a DOE administrative remedy available—namely, an application for the funds through the so-called Subpart V proceedings[3]—and that they have not utilized this remedy. Appellants' only means of avoiding the implications of the exhaustion doctrine is by finding an exception to the doctrine which applies to this case. Appellants contend that DOE has already decided not to remit funds to them and that their participation in the Subpart V proceedings would be futile. Their failure to exhaust their remedies, they maintain, is consequently excused by the futility exception to the exhaustion doctrine. Unfortunately for appellants, their contention is

---

3. The reference is to the procedure, mandated by 10 C.F.R. §§ 205.280–205.288, by which OHA determines the parties who are entitled to receive refunds for overcharges which violated DOE petroleum price regulations. OHA announced, 49 Fed.Reg. 1130 (January 9, 1984), that it would accept applications to determine who should receive the money disputed in this controversy. *Id.* at 1133.

not only untenable on legal grounds, it is not consistent with the facts of this case.

■ A narrow exception to the requirement that a litigant exhaust his administrative remedies before filing a judicial action is sometimes available when pursuit of administrative remedies to the point of exhaustion is demonstrably futile. Courts which have excused failure to exhaust on the ground of futility have generally emphasized that their action was an exceptional one granted only because of extraordinary circumstances in the particular case. For example, in *Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817 (2d Cir.1967), the court excused the failure of draft protesters to pursue futile administrative remedies. Noting that the protesters were threatened with induction into the army as a reprisal for their protests, the Second Circuit emphasized the "competing policies" posed by the "serious threat to the exercise of First Amendment rights." *Wolff, supra,* at 825. Similarly, in *Glover v. United States*, 286 F.2d 84 (8th Cir.1961), the Eighth Circuit excused another draft protester's failure to exhaust his administrative remedies in light of the manifest futility of doing so and the grossly arbitrary treatment he had received from the Selective Service System. The court also noted, however, that the requirement of exhaustion "is to be relaxed only under extremely exceptional and unusual circumstances." *Glover, supra,* at 91. Courts generally have not found such exceptional circumstances when mere economic interests, as opposed to constitutional liberties, were at stake. *See, e.g., Deltona Corp. v. Alexander*, 682 F.2d 888, 893–94 (11th Cir.1982); *Steere Tank Lines, Inc. v. I.C.C.*, 675 F.2d 763, 766 n. 7 (5th Cir. 1982). We do not believe that the present case presents exceptional circumstances which justify departure from the usual rule requiring exhaustion of administrative rem-

edies prior to litigating administrative disputes.

We need not rest our decision on this ground, however, as the facts of this case do not establish that it would have been futile for Ashland and Koch to pursue their administrative remedies. Appellants' first ground for regarding participation in the Subpart V proceedings as futile is that similarly situated parties allegedly have not prevailed before OHA in Subpart V proceedings in the past. The Fifth Circuit, in *Von Hoffburg v. Alexander*, 615 F.2d 633, 639 (5th Cir.1980), rejected the argument that a litigant is excused from pursuing administrative remedies because other parties have been unsuccessful in their pursuit of these remedies. We agree with the Fifth Circuit. To assume that OHA will reject Ashland's and Koch's claims because it has rejected other claims in the past is to assume that Ashland's and Koch's claims are factually indistinguishable from these claims. It is further to assume, even if the claims are factually indistinguishable from prior cases, that OHA is incapable of being convinced by appropriate arguments to alter its previous way of thinking. These are assumptions we are unwilling to make. The only way Ashland and Koch can determine whether it is futile for them to present their claims to OHA is to do so.

Appellants' second ground for their argument that participation in the Subpart V proceedings would have been futile is the assertion that OHA has already decided not to allow their claims. We reject this contention. We have already explained that appellants' fear of having their claim rejected cannot be justified merely because of past actions by OHA. Appellants point to statements DOE officials have made that they do not view appellants' claim with favor. What appellants do not mention, however, is that these were made by officials of the Department of Energy's Office of Special Counsel, the enforcement arm of DOE. See 49 Fed. Reg. 1130, 1131–32 (January 9, 1984).[4] The

---

**4.** In their brief, appellants cite language purportedly used by OHA to the effect that "although Ashland and Koch were originally contemplated as recipients of the refunds under the

remedial order, this remedy would now be inappropriate...." 49 Fed.Reg. *supra,* at 1131. The disingenuousness of appellants' use of this language is apparent when one reads language ap-

decision as to whether or not to grant appellants the relief they desire is one to be made by OHA, the adjudicatory arm of the department, which is independent of the enforcement arm and has both the responsibility and the duty to determine the matter on the basis of its own determination of what is fair to all parties. The fact that appellants may find themselves taking a position before the OHA which is opposed by the Office of Special Counsel does not mean that appellants are doomed to fail. Appellants, in short, ignore the independent status of OHA.

■ Appellants argue that they should have been permitted to pose interrogatories to DOE as to whether they would prevail in the Subpart V proceeding. To allow such discovery would be improper, and the district court was right not to grant it. A party does not have the right to approach an adjudicator prior to a hearing to determine whether the adjudicator favors his cause. Decisions of administrative tribunals may, in fact, be subject to vacation where an adjudicator answers pre-hearing questions on the merits of the issue. *See Pillsbury Co. v. Federal Trade Commission*, 354 F.2d 952 (5th Cir.1966).

■ Appellants further argue that it was improper to dismiss their action for failure to exhaust because their pleading alleged the futility of exhaustion. Since a court, in ruling on a Fed.R.Civ.P. 12(b)(6) motion to dismiss a complaint for failure to state a claim, must treat its allegations as true, appellants argue that their allegation that exhaustion of remedies would be futile must be taken as true. This argument is ingenious, but not persuasive. Appellants' complaint was not dismissed for failure to state a claim; it was dismissed for failure to exhaust remedies. A party cannot avoid

a jurisdictional bar to a case simply by alleging in the complaint that grounds for jurisdiction exist. The question of whether the federal courts ought to exercise jurisdiction in a given case is one for the courts themselves to determine, and not for the parties to control by the form of their pleadings. This is a proposition almost as old as our judicial system itself. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). We are not free to reconsider it now.

We conclude that appellants have failed to demonstrate that their failure to exhaust their administrative remedies was excused on the ground of futility. Accordingly, we affirm the district court's dismissal of appellants' complaint against DOE.

■ Although we affirm on this ground, we note that appellants' suit against DOE would be barred on another ground as well. Ashland and Koch were parties to the enforcement action DOE brought against New York. The district court entered a final order in that action approving the settlement terms directing that the money be placed in an escrow account with DOE, which would make ultimate disposition of it. Ashland and Koch chose not to appeal that order, which then became binding on all parties to the suit. It is elementary that a party may not relitigate an issue determined in an earlier suit. *See, e.g., Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 602 (1927), 71 L.Ed. 1069; *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–33 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Accordingly, Ashland and Koch, not having appealed the settlement, cannot now challenge DOE's power to make ultimate disposition of the money. Appellants' action against DOE is thus barred on two

pellants omitted from their quote: "The OSC (Office of Special Counsel) *asserted* in *its petition* that although Ashland and Koch were originally contemplated as recipients...." *Id.* (emphasis added). All the OHA itself said is that "There ... remains a significant degree of difficulty in identifying the parties who were ultimately injured and ascertaining the level of refunds which they should receive." *Id.* at 1132.

This language makes it clear, contrary to appellants' assertion, that OHA has not made up its mind who should receive the money. While OHA indicated that it might establish a "rebuttable presumption" that spot purchasers of petroleum from New York were not injured, *id.* at 1133, it specifically invited them to submit additional evidence so as to rebut the presumption. *Id.*

separate grounds: they failed to exhaust their administrative remedies within DOE before taking the matter to court, and they were parties to an earlier suit in which the matter was adjudicated against them.

### C. Dismissed Without Prejudice

■ The final question we must address is whether the dismissal of the action by New York against Ashland and Koch ought to have been without prejudice. Under the terms of Fed.R.Civ.P. 41(a), dismissal is without prejudice unless the order of dismissal specifies otherwise. As the order dismissing New York's suit was silent on this point, the dismissal was without prejudice.

■ The decision to dismiss a suit without prejudice upon plaintiff's motion is within the discretion of the trial court and may be reversed only for an abuse of discretion. *See, e.g., Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871, 879 (9th Cir. 1979); *Johnston v. Cartwright*, 355 F.2d 32, 39–40 (8th Cir.1966). There is authority to the effect that dismissal ought to be with prejudice where the defendant would otherwise suffer injustice. *See, e.g., Selas Corp. of America v. Wilshire Oil Corp. of Texas*, 57 F.R.D. 3, 7 (E.D.Pa.1972), *United States v. E.I. Du Pont de Nemours & Co.*, 13 F.R.D. 490, 496 (N.D.Ill.1953). Not every disadvantage to the plaintiff, however, constitutes the sort of injustice that precludes dismissal without prejudice. In *Du Pont de Nemours*, for example, the court stated, "[I]t is settled that the mere fact the defendants are exposed to another suit is not such a prejudice." *Du Pont de Nemours, supra*, at 497. Appellants argue that dismissal without prejudice will expose them to the risk of another suit, either by New York (which, appellants contend, could escape the effect of a statute of limitations which would otherwise bar a further suit, if New York chose to bring one), or by other parties, such as the working interest owners of the wells which produced the oil at issue in this case. Apart from the fact that we have serious questions as to the validity of appellants' fears that the dismissal without prejudice will expose them to further suit,[5] we note that *Du Pont de Nemours, supra*, at 497, specifically states that mere threat of another suit against defendant is not a ground for denying plaintiff's motion for dismissal without prejudice. Accordingly, we find that the trial court did not abuse its discretion by granting dismissal without prejudice.

### III. CONCLUSION

In summary, the trial court properly denied appellants' motion for leave to amend their answer in their litigation with New York so as to add an omitted counterclaim almost four years after the answer was filed on the ground that appellants' delay in filing the counterclaim constituted inexcusable neglect and that permitting the counterclaim to be filed now would prejudice the other parties, who had already settled the suit. The trial court also properly dismissed appellants' suit against DOE, which is barred by appellants' failure to exhaust their administrative remedies and by the res judicata effects of the settlement order in the suit New York brought against DOE, Ashland and Koch. Accordingly, we affirm the trial court's order in both these respects. We also find that the trial court did not abuse its discretion by dismissing New York's suit against Ashland and Koch without prejudice, and so we affirm on this point as well.

AFFIRMED.

---

5. Any new suit by New York would presumably be subject to the statute of limitations. It is difficult to see any connection, moreover, between the manner in which this suit is dismissed and the right of third parties like the working interest owners to bring suit on their own behalf.