CONSOLIDATED EDISON CO. OF
NEW YORK, INC. et al.,
Plaintiffs,

v.

George B. BREZNAY, Director, Office
of Hearings and Appeals, U.S. Dep't
of Energy, et al., Defendants.

Civ. No. 87–1669.

United States District Court,
District of Columbia.

Dec. 1, 1987.

Philip Kalodner, Washington, D.C., for plaintiffs.

John L. Gurney, Dept. of Energy, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case is before the Court on the Plaintiffs' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment. Plaintiffs, six electric utility companies seek relief from a determination by defendants, the Department of Energy's ("DOE") Office of Hearings and Appeals ("OHA") which denied them the right to participate in overcharge proceedings pending before OHA. For the reasons stated below, the Court grants summary judgment for the defendants.

On March 5, 1985, the Economic Regulatory Administration ("ERA") issued a Proposed Remedial Order ("PRO") to Cities Service Oil and Gas Corporation ("Cities Service") alleging crude oil pricing violations in the amount of approximately $257 million. On April 15, 1985, Cities Service filed a Notice of Objection to the PRO, contesting the alleged violations and instituting an adjudicative proceeding before OHA.

Pursuant to DOE regulations [1], on May 10, 1985, plaintiffs' counsel [2], filed a timely request on behalf of Philadelphia Electric Company ("PECO") to participate in the *Cities Service* proceeding. This request was granted on May 15, 1985.[3] PECO participated in the OHA proceedings in *Cities Service*, filing several pleadings asserting the deficiency of the theory of violation asserted by Cities and insufficiency in the amount of overcharges the ERA sought to recover. After seventeen months of participation in the proceedings, on October 17, 1986, PECO petitioned OHA for permission to withdraw from the *Cities Service* proceeding as required by the terms of a settlement agreement reached in an unrelated case, *In Re: The Department of Energy Stripper Well Exemption Litigation,* M.D.L. 378 (D.Kan). In accordance with its original request to participate, PECO sought only to withdraw its individual participation without prejudice to the other members of classes it sought to represent. Again, the defendants made no mention of the class representation issue in the grant of withdrawal to PECO by letter dated October 24, 1987.

---

1. DOE's administrative procedures provide in relevant part:

   (a) Upon receipt of a Notice of Objection, the Office of Hearings and Appeals shall publish a notice in the Federal Register which states ... that any person who wishes to participate in the proceeding must file an appropriate request with the Office of Hearings and Appeals.

   (b) The Office that issued the Proposed Remedial Order and the person to whom the Order is directed shall be considered participants ... at all stages of an enforcement proceeding. Any other person whose interest may be affected by the proceeding may file a request to participate in the proceedings ... within 20 days after publication of the notice referred to in paragraph (a) of this section.

   (c) After considering the requests submitted pursuant to paragraph (b) of this section, the Office of Hearings and Appeals shall determine those persons who may participate on an active basis in the proceeding and the nature of their participation.

   (e) A person requesting to participate after the period *must show good cause for failure to file a request within the prescribed time period.*

   10 C.F.R. § 205.194 (1987) (emphasis added).

2. Counsel for the plaintiffs participated in a joint request for participation on behalf of his clients, a trucking company, a taxi cab company and an individual motorist. The other participant in this request was the Philadelphia Electric Company represented by another attorney. Hereinafter all of these participants are included in the "PECO" designation.

3. In their request to participate both Philadelphia Electric Company and the surface transportation end users sought to represent the interests of all utilities burning oil to generate electricity and all of the surface transportation end users of oil products in the United States. This aspect of the request was not addressed by OHA.

Five months later, on March 30, 1987, plaintiff utility companies moved to intervene in the *Cities Service* case. The purpose of this intervention was to advance the positions on liability issues previously articulated by PECO. Plaintiffs' request to participate in the *Cities Service* matter involved submitting a memorandum in sufficient time for Cities to respond in the same document in which it would respond to the ERA's final brief, and to participate in oral argument. The plaintiffs contend that their participation would in no way delay the *Cities Services* proceeding.[4] On April 9, 1987, OHA denied plaintiffs' belated request on the ground that it was both untimely and it also sought to present issues for adjudication which were no longer in the proceeding.[5] Plaintiffs sought reconsideration of OHA's decision on April 21, 1987, which was denied on April 27, 1987 for the reasons previously given.[6] This suit was filed two months later, asking the Court to order the Director and Deputy Director of OHA to grant plaintiffs the right to participate in the final phase of the *Cities Service* proceeding.[7]

## I.

Plaintiffs assert that under *Fort Pierce Utilities v. DOE,* 503 F.Supp 1014 (D.D.C.

1980), this Court has implicitly held that the standard of intervention before OHA is easier to meet than under the Federal Rule of Civil Procedure because of strong public policy in favor of full participation before OHA. However defendants contend that *Fort Pierce* presents a different issue than the facts at bar. The Court agrees. In *Fort Pierce,* the plaintiffs complained that DOE permitted Exxon Corporation to participate in an enforcement proceeding as a potentially injured party but denied the same right to plaintiff public utilities who also claimed to be potentially injured parties. The district court found no basis for this disparate treatment, particularly since DOE "gave no reasons whatever for its denial of party status" to the public utilities. *Id.* at 1027. Further, the Court held that DOE "improperly exercised its discretion" under the regulations in denying full party status to the utilities. *Id.* In the instant case, there is no question that plaintiffs had standing to participate in the proceedings. Standing was accorded to an electric utility in 1985 when OHA granted PECO's timely application. Moreover, there is no indication that OHA improperly applied its rules when it denied plaintiffs request for participation.

4. Plaintiffs allege that their analysis demonstrates the irrelevancy of the evidence offered by Cities and that many of their arguments will simplify the analysis required by OHA.

5. In a January 13, 1986 Order issued to Cities, OHA stated:

One comment concerning the PRO is appropriate at this point. In the text of the March 5, PRO, there appear to be two possible theories of regulatory violation that the ERA could have brought into play. The first theory is that the purpose of the reciprocal transactions was to trade away price-controlled crude oil that Cities would otherwise have had to report to the Entitlements Program, the reciprocal transactions were a means to circumvent the Entitlements Program. As indicated above, however, the March 5 PRO does not make any conclusions of law concerning whether the certifications for various tiers of crude oil were properly passed and reported to the Entitlements Program. Accordingly, this first theory of liability has not been presented for adjudication in this proceeding. As a result, we will assume for purposes of this proceeding that the crude oil certifications were properly passed. The theory of regulatory viola-

tion that has been articulated in the conclusions of law portion of the March 5 PRO is that Cities charged a total price for price-controlled crude oil in excess of the lawful ceiling price for that grade and tier of crude oil. We will therefore evaluate the PRO on the basis of the second theory of liability.
*Cities Service Oil and Gas Corp.,* 13 DOE para. 84, 045 at 87, 352 (1986).

6. The fifteen states that are participating in the *Cities Services* proceeding objected to plaintiffs' request to intervene.

7. Over the past two years, the *Cities Service* case has moved to the point where it is now close to submission on all issues. An initial evidentiary hearing was held by OHA on July 28–31, 1986, subsequent to which Cities filed a post hearing brief on September 17, 1986. A second evidentiary hearing was conducted by OHA on December 3–5, 1986, and both parties again filed post hearing briefs. A third round of briefing was submitted to OHA by the parties on March 27, 1987 and April 17, 1987. The final evidentiary hearing originally scheduled for April 28, 1987, has been postponed and is awaiting rescheduling.

Plaintiffs also contend that under both the DOE regulations and Rule 24 of the Federal Rules of Civil Procedure, they have a sufficient "interest" for intervention. This contention is irrelevant on these facts because intervention was not denied on the basis that plaintiffs lacked an interest in the proceeding. Further in a similar case pending before the District Court for the District of Delaware, where these plaintiffs sought to intervene, that Court rejected this argument. *Getty Oil Co. v. DOE*, 117 F.R.D. 540, 548 (D.Del.1987). In *Getty* the district judge stated:

> TECA has twice specifically rejected motions to intervene by private parties in § 209 actions on the ground that the public and private enforcement devices must not be commingled. *Exxon Corp.*, 773 F.2d [1240] at 1283; *Cities Services*, 715 F.2d [572] at 574. The DOE enforcement action does not affect a private parties' right to recovery, and any restitutionary remedy ordered by a court to correct violations will not impair a legally cognizable interest. TECA's precedents demonstrate that private entities do not have the requisite interest in public enforcement actions brought under § 209 to intervene as of right.

*Id.* Finally, plaintiffs did not have to rely on DOE's enforcement action to protect their interests with respect to any overcharges by Cities. They had an independent cause of action for treble damages under Section 210 of the Economic Stabilization Act, 12 U.S.C. § 1904 note, which they chose not to exercise.[8] *See Cities Service Co. v. DOE*, 715 F.2d 572, 573–574 (Temp.Emer.Ct.App.1983).

## II.

■ In regard to the untimely nature of their request, plaintiffs assert that their application for intervention is timely because decisional law permits another member or members of a class to take the position of the timely intervenor as if it had filed at the time the original intervenor had filed. Using plaintiffs argument, if one assumes that the decisions of OHA granting withdrawal to PECO are viewed as deferring the class certification issue by not mentioning it, then another member of the class may intervene in place of the withdrawing intervenor, specifically citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In response, defendants point out that OHA's procedural rules for enforcement proceedings do not provide for class actions. *See* 10 C.F.R. § 205, Subpart O. Since plaintiffs' Motion for Summary Judgment states that "there is, indeed, no provision for formal class certification in the OHA Rules", and that plaintiffs never formally sought class certification, the Court concludes that there is no merit to the plaintiffs' class action argument on these facts.

## III.

■ The final and independent aspect of plaintiffs' request for relief is that their application is timely since they seek to participate only in an upcoming phase of the litigation and not to reopen prior proceedings. Therefore, plaintiffs conclude that by granting them participation, no prejudice accrues to Cities, the respondents in the OHA proceeding.[9] Plaintiffs also argue that they have a "legally protectable interest" which gives them the right to intervene in these proceedings. Each of these contentions will be addressed.

■ Intervention, whether of right or permissive, must be timely and if it is not timely it must be denied. *NAACP v. New*

---

**8.** Plaintiffs claim in their Motion for Summary Judgment that the passage of time virtually closes this remedy to them.

**9.** Plaintiffs contend that this is not a request for mandamus, however since plaintiff invoked the Court's jurisdiction under both 28 U.S.C. §§ 1361 and 1331 in their complaint, the Court will briefly address the issue of mandamus.

The law is well settled that a writ of mandamus should only be issued where there is a clear duty on the part of an official to act and that duty is clearly and plainly established. *King v. Morton*, 520 F.2d 1140, 1146 (D.C.Cir.1975). Accordingly, the Court concludes that there is no clear or plain duty of an official to act presented herein.

*York,* 413 U.S. 345, 365–366, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). The only reason given by plaintiffs for failing to file a timely request for participation is that they relied on another public utility, PECO, to advance their arguments. This justification was flatly rejected by the Temporary Emergency Court of Appeals in *New York Petroleum Corp. v. Ashland Oil, Inc.,* 757 F.2d 288, 292 (Temp.Emer.Ct.App.1985). That Court held:

> Appellants' argument that their delay was excused by their decision to rely on DOE to protect their interests is totally without merit. When a party decides to forgo taking action in a lawsuit in the expectation that another party will protect its interests, it does so at its peril.

*New York Petroleum,* 757 F.2d at 292. Accordingly this Court finds undue delay in Plaintiffs' request for participation.[10] Further, plaintiffs' counsel provides no acceptable explanation as to why plaintiffs waited until five months after PECO withdrew to seek intervention.

 Second, notwithstanding plaintiffs' unexcused delay in seeking participation, plaintiffs also endeavor to introduce arguments that OHA concluded in its January 13, 1986 Order were not presented for adjudication in the *Cities Service* proceeding. Since, PECO was a party at that point in the proceeding, the views of plaintiffs herein had been presented to OHA for consideration. It is apparent that plaintiffs seek at the very least to reopen an issue that OHA had previously determined. Therefore, presentation of plaintiffs' arguments in the final phase of the proceedings is untimely. Additionally, the fact that Cities may be aware of the positions advanced by plaintiffs is unpersuasive where Cities, in an enforcement proceeding against it, may be entitled to rely on an Order of OHA explaining the theory of violation that it will be charged with. Clearly, Cities would re-

quire some preparation time to address this renewed issue and this would then require delay in the proceedings. Finally, since plaintiffs did not participate in the two previous evidentiary hearings, presumably because they deemed them "irrelevant", it is unfair to require a delay in the proceedings for these plaintiffs.

The Court concludes that OHA gave a complete explanation for its decision to deny plaintiffs' request for participation. Indeed, OHA went beyond the fact that plaintiffs were inexcusably late in filing to demonstrate why plaintiffs participation would not be timely or appropriate in the final phase of the *Cities Service* proceeding. In light of the foregoing, summary judgment must be granted for the defendants.

A final judgment will be entered in accordance with this memorandum.

---

**10.** In their Motion for Summary Judgment plaintiffs contend that "[t]he only effect of plaintiffs delaying their application for intervention from July 5, 1986 when the *Stripper Well* Court's approval made it apparent that PECO would be required to withdraw as a putative class representative and from October 24 when

the OHA approved the withdrawal of PECO until March 30, 1987, was to eliminate them as participants in the two evidentiary hearings." Plaintiffs does not seek to reopen these proceedings, believing that the evidence adduced therein was "irrelevant" to the *Cities Service* proceedings.