The DELTONA CORPORATION, a Delaware corporation, authorized to do business in the State of Florida, Plaintiff-Appellant, Cross-Appellee,

v.

Clifford L. ALEXANDER, Jr., Secretary of the Army, Donald A. Wisdom, etc., Defendants-Appellees,

Environmental Defense Fund, Inc., et al., Defendants-Intervenors, Cross-Appellants.

No. 81–5226.

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1982.

Peeples, Earl, Moore & Blank, William F. Tarr, William L. Earl, Robert H. Blank, Miami, Fla., for plaintiff-appellant, cross-appellee.

James T. B. Tripp, Environmental Defense Fund, Inc., New York City, for defendants-intervenors.

Fred R. Disheroon, Nancy J. Marvel, Dept. of Justice, Washington, D. C., for Alexander, Adams, U. S. Army Corps of Engineers, Dept. of the Army.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

KRAVITCH, Circuit Judge:

The Deltona Corporation [Deltona] appeals from the district court's grant of summary judgment against it in this litigation concerning the Army Corps of Engineers' [the Corps] denial of certain permits to enable Deltona to complete a proposed land development at Marco Island, Florida. Deltona asserts that the district court erred in granting summary judgment for the Corps because material issues of disputed fact existed regarding the extent of Corps jurisdiction over its property and regarding whether the Corps was equitably estopped from denying the permits.[1] Unpersuaded that the trial court erred, we affirm, 504 F.Supp. 1280.

I.

In 1964 Deltona purchased approximately 10,300 acres of land in Marco Island, Florida, for construction of a planned community development. The master plan for the property called for "finger canals" by which boats would have direct access to homesites on the island—a distinctive feature of the development. In order to create these canals and complete the development, Deltona proposed to dredge certain areas of the property and fill others. The construction plan required permits both from the State of Florida and the Army Corps of Engineers.

Deltona divided Marco Island into five separate construction areas. In order of scheduled completion, these areas were Marco River, Roberts Bay, Collier Bay, Barfield Bay, and Big Key. In 1964, Deltona obtained all the necessary state and federal permits to dredge and fill the Marco River construction area. At this time the only federal law affecting Deltona's activities was § 10 of the Rivers and Harbors Act, 33 U.S.C. § 403, which required a permit from the Corps for any construction which could create an obstruction to navigable waters of the United States, and the Corps granted Deltona the permit without objection.

In 1969 Deltona sought the necessary permits to begin construction in the Roberts Bay tract. Again the state and local permits were issued without problems, but the Corps had begun taking a different view of its authority and responsibilities in issuing § 10 permits. Rather than issuing the permits as a matter of course after determining that the proposed construction would not interfere with navigable waters, the Corps in 1969 began denying permits on the basis of the effect of the proposed construction on other public interests, such as fish and game. In *Zabel v. Tabb*, 296 F.Supp. 764 (M.D.Fla.1969), rev'd, 430 F.2d 199 (5th Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971), for example, the Corps had denied a § 10 permit to a developer on the grounds that the proposed construction would have an adverse effect

1. Deltona originally raised an additional claim: that the district court erred by not staying the proceedings in the present case pending a decision by the Court of Claims in an action filed by Deltona to obtain compensation for an alleged "taking" of its Marco Island property by the government's denial of the requisite construction permits. The intervenors also complained about the trial court's handling of the taking claim, urging that the court incorrectly decided that the taking issue was within the exclusive jurisdiction of the Court of Claims. The Court of Claims has now decided the "taking" issue, however, *Deltona Corp. v. United States*, 657 F.2d 1184 (Ct.Cl.1981), cert. denied, ——— U.S. ———, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982), rendering these additional claims by Deltona and the intervenors moot.

on fish and game in the area. The district court held that the Corps lacked authority to deny permits for any reason other than interference with navigable waters, and the Corps appealed. The Fifth Circuit reversed the district court's decision, but the appeal was pending at the time Deltona sought its Roberts Bay permit.

It was against this background of legal uncertainty that the Roberts Bay permit struggle played. The United States Fish and Wildlife Service voiced strenuous objections to the Roberts Bay permit, but a district court had ruled the Corps powerless to deny permits on those grounds and the appeal was pending. Rather than litigate, the parties engaged in extensive negotiations which led to the grant of the Roberts Bay permit with several conditions. Two of the conditions are relevant to this appeal. Condition (bb) stated:

Permittee understands that all permit applications are independent of each other and that the granting of this permit does not necessarily mean that future applications for a permit or permits in the general area of the proposed work by Marco Island Development Corporation or others will be similarly granted.

Condition (cc) stated in relevant part:

That the permittee recognizes that the Department of the Army considers that its jurisdiction extends to the mean high water line and requires individuals or firms wishing to conduct dredging or filling operations seaward of the mean high water line to apply for appropriate Department of the Army Permits prior to initiating any such work. Permittee agrees that it will advertise or offer for sale to the general public only parcels of land landward of bulkhead lines that have already been established by the State of Florida [ ] and for which a plat and suitable performance bonds have already been filed ... As to all other areas, permittee agrees that it will not offer for sale [lots] which (1) are in whole or in part seaward of the mean high

water line and which (2) could not be made suitable for [buildings] in the absence of a Department of the Army fill permit which has not yet been issued.

In 1971 Deltona began the permit process for the remainder of the Marco Island development. Once again, however, the legal and political climate had changed. In late 1969 Congress approved the National Environmental Policy Act, and in October, 1972, Congress passed the Federal Water Pollution Control Act (now called the "Clean Water Act"). Section 404 of the Act, 33 U.S.C. § 1344, required a permit for dredge and fill activities, and specifically required consideration of environmental factors. The state permit climate also had changed, and Deltona was able to obtain state permits only after extended negotiations and after Deltona agreed to transfer 4000 acres of land to Florida for conservation. Federal officials were aware of these negotiations. .

After securing the state permits, Deltona submitted its initial application to the Corps for § 10 and § 404 permits in April, 1973. The Corps advised Deltona that processing of the application would have to await receipt of state water quality certifications, which were issued in April 1974. By this time the Corps had issued regulations on § 404 permits, recognizing the environmental importance of wetlands. *See* 33 C.F.R. § 320.4(b). After the requisite public hearings,[2] the District Engineer recommended denial of the Barfield Bay and Big Key permits. The engineer found that the project would destroy 2152 acres of mangrove wetlands and 735 acres of bay bottom, contrary to the wetland conservation policies in the Corps regulations, and that substantial fish and wildlife losses would result. Because construction at Collier Bay had already progressed beyond the point where a halt would save significant resources, however, the engineer recommended granting this permit.

---

2. The procedures for considering § 404 permit applications are listed in the statute and Corps regulations. *See* 33 U.S.C. § 1344, 33 C.F.R. §§ 325.1 325.11.

On appeal,[3] the Division Engineer recommended granting the three permits because a denial of the permits would impose a great hardship on Deltona, but on further appeal the Chief of Engineers agreed with the District Engineer's recommendations. The Chief of Engineers found that the damage to wetlands which would result from granting the Barfield Bay and Big Key permits was not outweighed by the benefit of Deltona's construction, and consequently denied those permits, but granted the permit for Collier Bay. Deltona then filed suit in federal court for review of the Corps' denial of the Barfield Bay and Big Key permits. The court granted summary judgment for the Corps, and Deltona appealed.

## II.

█ Deltona first claims that the Corps was estopped from denying the permits for Barfield Bay and Big Key. Deltona asserts that government officials had known of the Marco Island development plans from the beginning, had unofficially endorsed those plans, and had participated in the 1971–72 negotiations between Deltona and the State of Florida for the necessary state permits for the Barfield Bay and Big Key construction. Deltona urges, moreover, that condition (cc) in the 1969 Roberts Bay dredge and fill permit restricting future sales to already-platted areas amounted to a Corps authorization for Deltona to sell lots in those areas, which included Barfield Bay and Big Key. Accordingly, Deltona argues it is at least entitled to a trial on the estoppel issue.

We disagree. In *Federal Corp. Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) the Supreme Court held that the United States government could not be equitably estopped by the conduct of its agents. "Whatever the form in which

the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* at 384, 68 S.Ct. at 3. Although never overruled, the apparently absolute holding of *Merrill* that the federal government could never be estopped by the conduct of its agents has eroded in the face of later Supreme Court precedents which state that an open issue exists whether estoppel lies against the government if a party proves "affirmative misconduct" on the part of a government agent. *See Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981); *INS v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973); *Montana v. Kennedy*, 366 U.S. 308, 314–15, 81 S.Ct. 1336, 1340–41, 6 L.Ed.2d 313 (1961).[4]

Other courts, including the former Fifth Circuit, have suggested that the government is subject to estoppel when it acts in a proprietary manner, but not when it exercises its sovereign powers for the benefit of the public. *See Air-Sea Brokers, Inc. v. United States*, 596 F.2d 1008, 1011 (C.C.P.A. 1979); *United States v. Florida*, 482 F.2d 205, 209 (5th Cir. 1973); *United States v. Georgia Pacific Co.*, 421 F.2d 92, 100–101 (9th Cir. 1970). As the former Fifth Circuit stated in *United States v. Florida, supra*, 482 F.2d at 209:

> Whether the defense of estoppel may be asserted against the United States in actions instituted by it depends upon whether such actions arise out of transactions entered into in its proprietory capacity or contract relationships, or whether the actions arise out of the exercise of its powers of government. The United States is not subject to an estoppel which

3. Under Corps regulations, Division Engineers review the decisions of District Engineers to which there are outstanding objections. 33 C.F.R. § 325.8(b). If a federal agency objects to the decision of the Division Engineer, the case may be forwarded for review by the Chief of Engineers. 33 C.F.R. §§ 325.8(c) & (d). The continued objections of the EPA and United States Fish and Wildlife Services resulted in

review of the Barfield Bay and Big Key permits at all three levels.

4. The Ninth Circuit has adopted the "affirmative misconduct" exception, *see Lavin v. Marsh*, 644 F.2d 1378 (9th Cir. 1981), but neither the former Fifth nor Eleventh Circuits has addressed the issue.

impedes the exercise of the powers of government, and is not estopped to deny the validity of a transaction or agreement which the law does not sanction.

(citations omitted). *See Hicks v. Harris*, 606 F.2d 65, 68 (5th Cir. 1979) ("Estoppel cannot be asserted against the United States in actions arising out of the exercise of its sovereign powers ...)."

Applying these binding Fifth Circuit precedents [5] to the case at bar, we conclude the trial court correctly granted summary judgment to the Corps. The act of granting a § 404 permit is unquestionably an exercise of the government's sovereign power to protect the public interest. In fact, the entire rationale behind the § 404 permit is to insure that the public interest in environmental safety and quality is preserved. *See, e.g.,* S.Rep.No.92–414, 92d Cong. 2d Sess. (1971) *reprinted in* [1972] U.S.Code Cong. & Ad.News 3668, 3669–75; *Deltona Corp. v. United States*, 657 F.2d 1184, 1187 (Ct.Cl.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Nor do we find it necessary to address the hypothetical "affirmative misconduct" exception to the general rule that one may not assert estoppel against the government acting in its sovereign capacity. Viewing Deltona's factual allegations and inferences therefrom in the light most favorable to appellant, as we must in reviewing a summary judgment motion, we find that none of the alleged conduct rises to the level of "affirmative misconduct." [6] The essence of Deltona's claim is that the government knew of Deltona's plans but

failed to interpose any objection; Deltona does not assert, and the record does not support, a claim that the Corps affirmatively represented to Deltona that permits for Barfield Bay and Big Key would be granted. Deltona argues that it interpreted condition (cc) in the Roberts Bay permit as an authorization to sell lots in the Barfield Bay and Big Key areas, and in fact relied on the condition in selling those lots. Condition (cc), however, merely restricts Deltona's lot sales, which had begun prior to the issuance of the Roberts Bay permit, to those areas already platted and bulkheaded. The condition in no way implied that the dredge-and-fill permits for the area would be granted. In fact, condition (bb) in the Roberts Bay permit accomplished the exact opposite, warning Deltona that future permits for Marco Island work would not necessarily be forthcoming. Accordingly, we find no error in the district court's grant of summary judgment to the Corps on Deltona's estoppel claim.

### III.

Deltona's second claim is that it is entitled to a trial to establish the extent of Corps jurisdiction over Deltona's Marco Island property. The district court misconstrued this count of Deltona's complaint as a challenge to the Corps jurisdiction per se. On appeal, Deltona correctly notes that its claim is not whether the Corps has *any* jurisdiction over the Marco Island property, but rather the boundary of that jurisdiction. Deltona concedes that the Corps has

---

**5.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**6.** The Supreme Court cases leaving the issue open indicate that silence, acquiescence, or even negligence fall short of "affirmative misconduct." In *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), for example, a Social Security Administration Field Representative erroneously told a Social Security claimant that she was not eligible for "mother's insurance benefits" under § 202(g) of the Social Security Act, 42 U.S.C. § 402(g) and ignored an instruction in the SSA's Claims

Manual that field representatives should advise applicants on the advantages of filing written applications and should recommend to persons uncertain of their eligibility to file a written application. The Court nevertheless held that these acts were not "affirmative misconduct" and did not "raise a serious question whether [the government] is estopped ...." *Id.* at 786–90, 101 S.Ct. at 1470–72. *See Lavin v. Marsh*, 644 F.2d 1378, 1383 (9th Cir. 1981) ("While the Army's acts ... may be labeled negligent, we do not find in the facts of this case the kind of affirmative misconduct which would justify the application of equitable estoppel. There is no pervasive pattern of false promises here.").

jurisdiction over wetlands, and the Corps concedes it has no jurisdiction over uplands. Deltona, therefore, essentially wants a declaratory judgment as to which portions of its property are which. Despite the trial court's mischaracterization of the claim, we conclude that summary judgment for the Corps was proper because of Deltona's failure to exhaust its administrative remedies.

"As a general rule parties are required to pursue administrative remedies before resorting to the courts to challenge agency action." *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1034 (5th Cir. Unit B 1982). *See Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *Von Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir. 1980); *Hedley v. United States,* 594 F.2d 1043, 1044 (5th Cir. 1979); *Rhodes v. United States,* 574 F.2d 1179, 1181 (5th Cir. 1978). The exhaustion rule serves a number of policies, including promoting consistency in matters which are within agency discretion and expertise, permitting full development of a technical issue and factual record prior to court review, and avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any errors and possibly moot the need for court action. *E.g., Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972); *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Haitian Refugee Center, supra,* 676 F.2d at 1034; *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 499 (9th Cir. 1981); *Assoc. of National Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1156 (D.C.Cir.1979).

■ Like all other broad doctrines, the exhaustion rule has numerous exceptions. Courts will not require exhaustion, for example, when the administrative remedy is inadequate because it does not exist, would not provide relief commensurate with the claim, or would be so unreasonably delayed as to create a serious risk of irreparable injury. *Walker v. Southern Railway,* 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); *Patsy v. Florida International University,* 634 F.2d 900, 903 (5th Cir. 1981), *rev'd on other grounds,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Rhodes v. United States, supra,* 574 F.2d at 1181. Nor will exhaustion be required when it would be futile because the claim clearly will be denied, or when administrative action would not resolve the merits of the claim, such as in a constitutional attack on the administrative scheme. *See Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *Patsy, supra; Von Hoffburg v. Alexander, supra,* 615 F.2d at 638; *Fuentes v. Roher,* 519 F.2d 379 (2d Cir. 1975).

■ Several circuit court cases which have addressed the issue of exhaustion in the context of agency jurisdiction have held that the agency ordinarily should be given the first opportunity to consider a challenge to its jurisdiction. *See Shawnee Coal Co. v. Andrus,* 661 F.2d 1083, 1093 (6th Cir. 1981); *West v. Bergland,* 611 F.2d 710, 719 (8th Cir. 1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980); *Marshall v. Burlington Northern, Inc.,* 595 F.2d 511, 513 (9th Cir. 1979); *In Re Restland Memorial Park,* 540 F.2d 626, 628 (3d Cir. 1976). We find these decisions persuasive, especially in light of the facts of this case. The Corps has not yet had an opportunity to rule on the extent of its jurisdiction over Deltona's lands. The parties all agree that at least some of Deltona's proposed construction involved wetlands, hence the Corps concededly had the authority to deny the requested permit. Whatever controversy exists as to the *extent* of Corps jurisdiction may well be settled by an administrative determination of how much of Deltona's property constitutes wetlands, thus avoiding unnecessary judicial intervention. The wetlands determination, moreover, is precisely the type of decision that falls within the rest of the policies supporting the exhaustion requirement. Even appellant concedes that the decision will require extensive expert testimony, including a thorough analysis of the vegetation on the property; committing

this determination to the Corps in the first instance permits complete development of the factual record, utilizes the agency's expertise in this technical area, and encourages the development of uniform standards to guide future decisions. Nor are any of the exhaustion exceptions applicable. Deltona's administrative remedy is neither inadequate nor futile—in fact, for the purposes of the permit application the Corps previously accepted a wetlands boundary drawn by Deltona's own expert—and Deltona is not challenging either the legality or constitutionality of the § 404 permit scheme.[7] Accordingly, we hold that the district court properly granted summary judgment for the Corps on this jurisdictional issue despite the court's mischaracterization of Deltona's claim.[8]

AFFIRMED.

7. We have considered the cases cited by Deltona in support of its assertion that the district court should have determined the extent of Corps jurisdiction and find none of them relevant. In *Avoyelles Sportsmen's League, Inc. v. Alexander*, 511 F.Supp. 278 (W.D.La.1981) the court indicated in its opinion that it had required the plaintiff to obtain a final wetlands determination from the Corps before proceeding with the review action in district court. *Minnehaha Creek Watershed District v. Hoffman*, 597 F.2d 617 (8th Cir. 1979) involved a review of a final determination of navigability issued by the Corps. Finally, *Weiszmann v. District Engineer*, 526 F.2d 1302 (5th Cir. 1976) did involve a court determination of Corps jurisdiction, but the issue there was whether the plaintiff was required to apply for a permit, and the Corps had joined the issue by demanding that the plaintiff cease operations and apply for a permit. Thus *Weiszmann* dealt with whether the Corps had jurisdiction at all, and the Corps

had decided the dispute in their favor by issuing the demand letter. The jurisdictional issue, therefore, was ripe for review, in contrast to the situation here, in which the Corps has yet to affirmatively rule on the extent of its jurisdiction over Deltona's property.

8. We caution that not every challenge to agency jurisdiction is automatically subject to the exhaustion rule. As the Supreme Court noted in *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) "[a]pplication of the doctrine requires an understanding of its purposes and of the particular administrative scheme involved." Thus applying the exhaustion doctrine to a particular case requires a careful balancing of interests for and against exhaustion, and the balance we have struck here must not be mechanically applied to cases which may present different interests.