**ROUTE 26 LAND DEVELOPMENT ASSOCIATION, Plaintiff,**

v.

**UNITED STATES GOVERNMENT, Defendant.**

**Civ. A. No. 88–643 LON.**

United States District Court, D. Delaware.

Dec. 11, 1990.

Harold W. T. Purnell, II, Tunnell and Raysor, Georgetown, Del. (Stanley J. Walcek, Bethany Beach, Del., of counsel), for plaintiff.

Kent A. Jordan, U.S. Attys. Office, Wilmington, Del. (Rebecca A. Lloyd, U.S. Dept. of Justice, Washington, D.C., Barry F. Gale, U.S. Army Corps of Engineers, Philadelphia, Pa., Richard F. Frank, U.S. Army Corps of Engineers, Washington, D.C., of counsel), for defendant.

## OPINION

LONGOBARDI, Chief Judge.

The Plaintiff in this case seeks declaratory relief with regard to the jurisdiction of the United States Army Corps of Engineers (the "Corps") over the Plaintiff's property and the permitting process of the Corps pursuant to the federal Clean Water Act (the "CWA"), 33 U.S.C. § 1251, *et seq.* The Plaintiff intends to use this property for residential development. This is the Court's Opinion on the Government's motion to dismiss.[1]

---

1. The Government brought this motion on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). The pleadings are closed in this matter. However, since this Opinion is based on matters outside of the pleadings (*e.g.,* affidavits), it is more appropriately determined as a motion by the Government for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Fed.R.Civ.P. 12(c). The Court has put the parties on notice of this procedure and has afforded them an opportunity to supplement the record. *See* Letter from the Court dated July 11, 1990.

## I. BACKGROUND

The Plaintiff is the owner of a 14–1/2 acre tract of land located in the Town of Bethany Beach, Delaware (the "Site"). Thirteen of these acres, according to Plaintiff, "have been designated as 'wetlands'" by the United States of America through the Corps. Plaintiff alleges that of these 13 acres, approximately 4–1/2 acres have also been designated as "wetlands" by the State of Delaware.

In May of 1984, the Plaintiff's representative, Mr. Stanley Walcek ("Walcek"), contacted the Corps to determine whether the Site was subject to the Corps' jurisdiction. Docket Item ("D.I.") 14 at 2.[2] Subsequently, Walcek received a letter from the Corps which stated that a "majority of the proposed project site is wetland habitat and is, therefore, subject to the jurisdiction of" the Corps. Id., Affidavit ("Aff.") I.

Certain filling and clearing activities took place on the Site. The Acting District Engineer determined these activities were in violation of section 301 of the CWA. D.I. 14, Exhibit ("Ex.") 6. A Cease and Desist Order was issued by the Acting District Engineer for the Corps to Walcek on May 27, 1986, directing that the filling activities cease and the removal of all fill from the Corps' jurisdictional areas within 30 days. D.I. 14 at 3; see also id., Ex. 6. On October 30, 1986, the Corps sent a second letter to Walcek requiring him to remove the fill from those portions of the Site covered by the Corps' jurisdiction within 25 days. D.I. 14 at 3; see also id., Ex. 11. On November 7, 1986, Walcek contacted the Corps to request a six month extension to remove the fill and he questioned whether the Corps had jurisdiction over the Site. Id. Walcek, at that time, also requested that

the Corps allow a permit application to be processed without having to remove the fill. D.I. 14 at 3; see also id., Ex. 12. The Corps wrote Walcek on January 28, 1987, to grant an additional 30 day extension from January 28, 1987,[3] and to inform Walcek that it would accept an after-the-fact permit application only after the fill was removed. Id. Additionally, the Corps informed Walcek that the Corps did, in fact, have jurisdiction over the Site. Id. On May 27, 1987, a site inspection by the Corps led it to determine that some of the fill had been removed.[4] D.I. 14 at 3. On February 22, 1988, Walcek sent the Corps an incomplete application for a permit to develop the site. Id.; see also id., Ex. 15 (incomplete permit application). A follow-up inspection of the Site revealed that while the fill in the most environmentally sensitive areas was gone, some of the fill remained in other areas. Id. at 3–4; see also id., Ex. 16.

On November 17, 1988, the Plaintiff filed this declaratory relief action. The Corps informed Walcek on December 14, 1988, that it would accept an after-the-fact permit application because the fill had been removed from the most environmentally sensitive areas. D.I. 14 at 4; see also id., Ex. 17. It also informed Walcek that additional information was necessary to complete the application. Id.[5] Also, Walcek was advised that he would have to submit proof of compliance with the State of Delaware's Coastal Zone Management Program and show that he received a Water Quality Certificate before the Corps could complete its permitting process. To date, the application remains incomplete and it is still pending before the Corps.

The Plaintiff alleges in its complaint that the "Federal government has advised the Petitioner that they would never allow fill

---

2. In its answer to the Government's brief in support of its motion to dismiss, the Plaintiff "accept[ed] as essentially correct" the facts in the Government's brief. D.I. 15 at 1.

3. The Corps also gave Walcek 45 days after the expiration of the 30 days extension to remove the fill. Id.

4. Walcek denies that any fill was removed. D.I. 15, Ex. 1. This is not a material fact for the issues presented in this action.

5. The information requested included: (1) a completed Coastal Zone Consistency Statement; (2) a description of activities proposed, including any digging or structures; (3) a completed Environmental Questionnaire; and (4) a plan and cross-sectional view drawings of the property depicting the areas of federal jurisdiction and a cross-sectional drawing of a typical bulkhead as proposed with mean high water and low water elevations depicted. D.I. 14 at 4.

to be placed on their designated area for the purpose of private housing to be built thereon." D.I. 1, ¶ 7. Richard Hassel is the Chief of the Applications Section of the Regulatory Branch of the Corps and is responsible for the permit application process and for recommending whether or not to grant a permit application. He has submitted an affidavit disputing Walcek's contention. The affidavit states that the Corps "has not informed ... Walcek that 'the [Walcek] fill permit would never be granted,' as alleged in the complaint. Such a statement would be contrary to the Corps' regulations and the policies of this District." D.I. 14, Aff. II. Also, the Plaintiff alleges that the "only viable economic use of the [Site] would be for use as private housing—now allowed by the Town of Bethany Beach." Id., ¶ 8. The Plaintiff further alleges that the Site "borders a privately owned drainage ditch called the 'Bethany Beach Loop Canal', and is about 3/4 of a mile from the Assawoman Canal—a Federally owned waterway [and i]t is not anticipated that the use of the [Site] for housing would not [sic] cause any pollution of the Federal waterway." Id., ¶ 9.

The Plaintiff's complaint apparently seeks declaratory relief on three main issues: jurisdiction, abuse of discretion and whether or not the action of the Corps has worked a taking of the Plaintiff's property.[6] The jurisdiction issue has three parts: (1) whether the federal government and/or the State of Delaware properly has jurisdiction over the Site, D.I. 1, Question II; (2) whether there is federal jurisdiction over the Site in the alleged absence of pollution by the Plaintiff's proposed activities at the Site, id., Question III; and (3) whether the Corps has jurisdiction over the Site in light of the alleged non-adjacency of the Site to a federal waterway, id., Question I. With regard to the Corps' action during the permit process, the Plaintiff apparently seeks declarations that the Corps has abused its discretion by (1) refusing to process the permit application in its current form, id., Question IV; and (2) by refusing to give the Plaintiff an official determination on the permit application when a representative of the Corps has told Walcek that the permit would never be granted, id., Question V. Finally, the Plaintiff apparently seeks a declaration as to whether the Corps' activities thus far constitute a taking of the property by the federal government, id., Question VI.

Because the Plaintiff's after-the-fact permit application is presently incomplete and pending before the Corps, the Government argues that the Plaintiff's complaint should be dismissed on the grounds of lack of ripeness and failure to exhaust available administrative remedies. The Government argues that it would be "highly improper" for this Court to entertain a challenge to what it characterizes as an "on-going agency action that will ultimately lead to a decision on the merits of the [Plaintiff's] permit application." D.I. 14 at 9.

The Plaintiff, however, argues that the issue for this Court is whether the Plaintiff must submit to the permit process. Since the Corps has asserted jurisdiction over the site and there is no mechanism for the Plaintiff to appeal that determination within the agency, the Plaintiff argues the requirements of ripeness and exhaustion have been satisfied.[7]

6. The questions presented to the Court by the Plaintiff's action for declaratory relief are:
   Does the United States have jurisdiction when the land in question is not adjacent or contiguous to a Federal waterway?
   Is the Federal government—(a) precluded and/or preempted by State or municipal jurisdictions; or (b) by their own regulations neglected to pass the jurisdiction to the State?
   Is there Federal jurisdiction when the Petitioner's activity would cause no pollution?
   If a permit application and ruling on the same [is] required, has the Corps of Engineers abused its discretion in not allowing the permit process [sic] to be processed?

   Is a permit required to be processed with the Corps of Engineers when the Petitioner has been advised that the fill permit would never be granted to them for the purpose claimed?
   Is the Petitioner entitled to a loss of use damage claim by virtue of the activity of the Federal government in this matter?
   D.I. 1 at 3–4.

7. The Court finds curious the timing of the Plaintiff's challenge to the Corps' jurisdiction in light of the fact that it has previously submitted itself to the Corps' jurisdiction by applying for an after-the-fact permit.

The parties presented information outside of the pleadings for this Court to consider and the Court gave the parties notice of its intention to treat the motion as one for summary judgment. Because the Court gave the parties an opportunity to supplement the record, it will now make its determination on the basis of summary judgment standards. Fed.R.Civ.P. 12(c). Those familiar standards require that summary judgment be granted when there is no genuine issue as to any material fact and the moving party shows that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Where, as here, affidavits have been submitted by the moving party, the "adverse party must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Those facts which are "material" will be determined from the substantive law to which they are to be applied. *U.S. v. New Castle County*, 727 F.Supp. 854, 860 (D.Del.1989). Furthermore, the Court must take all reasonable inferences from the evidence most favorably to the non-moving party, here the Plaintiff. *Id.* at 861.

## II. DISCUSSION

Before beginning an analysis of the specific allegations in this case, it is helpful to review the regulatory scheme of the CWA and the considerations involved in judicial review of an agency action.

### A. *The Clean Water Act*

The CWA establishes a comprehensive program to restore and maintain the chemical, physical and biological integrity of the waters of the United States. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" except in compliance with various provisions of the CWA. The CWA defines the phrase "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). "Pollutant" is defined broadly to include, *inter alia*, "dredged spoil", "biological materials", "heat", "rock", and "sand." 33 U.S.C. § 1362(6). "Navigable waters" is defined broadly, for purposes of CWA, to "mean[ ] the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).[8]

The Secretary of the Army (the "Secretary") is authorized, pursuant to section 404 of the CWA, to issue permits "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a). Rules regarding the Corps' authority under section 404 are codified at 33 C.F.R. Parts 320–329. District engineers of the Corps are authorized to "issue formal determinations concerning the applicability of the [CWA] ... to activities or tracts of land and the applicability of general permits or statutory exemptions to proposed activities." 33 C.F.R. § 320.1(a)(6). Such determinations "shall constitute a Corps final agency action." *Id.*[9]

Part 320 contains the Corps' general policies for evaluating permit applications.[10]

---

**8.** Several important terms which are not defined in the CWA have been defined in rules promulgated pursuant to the Act. The term "waters of the United States" includes "wetlands adjacent to waters (other than waters that are themselves wetlands)...." 40 C.F.R. § 230.3(s)(7). "Adjacent" means "bordering, contiguous, or neighboring." 33 C.F.R. § 328.3(c). "Wetlands" are "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas." 33 C.F.R. § 328.3(b); *see also United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

**9.** "In order to provide clarity to the public, we [the Corps] have added a provision to codify existing practice that when a district engineer makes certain determinations under these regulations, the public can rely on that determination as a Corps final agency action." Preamble to Corps of Engineers Wetlands Regulations (51 Fed.Reg. 41206), *reprinted in* Law of Wetlands Regulation, App. 3–2.

**10.** Under section 320.4(a), the Corps must undertake a "public interest review" of all permit applications. In deciding whether to issue a permit, the Corps must carefully balance the "benefits which reasonably may be expected to accrue from" issuance of the permits "against its reasonably foreseeable detriments." 33 C.F.R. § 320.4(a)(1).

Factors to consider include, *inter alia,* "conservation, economics, aesthetics, general environmental concerns, wetlands, ... flood hazards, floodplain values, land use, ... shore erosion and accretion, recreation, water supply and conservation, water quality, ... considerations of property ownership and, in general, the needs and welfare of people." *Id.*

Part 325 governs the permitting process and lists the items which must be submitted with an application for a section 404 permit.[11]

If a person violates the CWA before applying for a permit, the Corps has the authority to issue a permit based on an "after-the-fact" permit application if initial corrective measures are completed. 33 C.F.R. § 326.3(e).

The EPA and the Corps share enforcement authority with respect to dredge and fill activities. Rules promulgated pursuant to section 404 have interpreted the Corps' authority to include the authority to demand that persons who are dredging and filling in violation of the CWA stop the activity and the authority to recommend that legal action be instituted against persons who dredge and fill in violation of the CWA. *See, e.g.,* 33 C.F.R. Part 326. However, section 404 provides that nothing in section 404 is intended to limit the EPA's authority to enforce the CWA. 33 U.S.C. § 1344(n).

The enforcement scheme of the CWA gives the EPA and the Corps discretion regarding how to achieve compliance. Upon a finding that any party is violating the CWA, the EPA may choose between issuing an order requiring the party to comply with the Act or bringing a civil action in federal District Court. 33 U.S.C. § 1319(a)(1). Similarly, upon a finding that a person is illegally engaging in dredge and fill activity, a district engineer of the Corps will notify the responsible persons, 33 C.F.R. §§ 326.3(c), 326.4(d), and then determine whether or not to recommend that legal action be taken. 33 C.F.R. § 326.5.

## B. *Judicial Review of Agency Action*

◼ In determining whether or not to review an pre-enforcement agency action, a court must consider the finality of the agency action, whether or not judicial review of the action is precluded by statute, the ripeness of the issue and whether or not the Plaintiff has exhausted any available administrative remedies.

The requirement that courts review only final agency actions is found in the Administrative Procedure Act. Section 704 of Title 5 provides "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. In determining what constitutes a final agency action, the Supreme Court has taken a pragmatic approach by focusing on the disruption to the administrative process that would occur if the court were to review the agency action and on whether the agency action will result in legal consequences or a determination of rights or obligations. *Bell v. New Jersey and Pennsylvania,* 461 U.S. 773, 779–80, 103 S.Ct. 2187, 2191–92, 76 L.Ed.2d 312 (1983); *FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980).

The Third Circuit has listed several factors which are relevant in determining the finality of agency action. Courts should consider whether or not the agency action represents the definitive position of the agency, has the status of law and has an immediate impact on the daily operations of the landowner. One should also consider whether the dispute is over a pure question of law without need for factual development and whether a pre-enforce-

---

11. Among these required items are: (1) the standard application form, 33 C.F.R. § 325.1(c); (2) a certification from the State in which the discharge originates that the discharge will comply with the applicable water quality standards, 33 U.S.C. § 1341(a)(1) and 33 C.F.R. § 320.3; (3) a certification that a proposed activity will comply with the state's coastal zone management program, 33 C.F.R. § 320.3(b); and (4) any additional information that the district engineer deems essential to make a public interest determination, which may include environmental data, 33 C.F.R. § 325.1(e).

ment challenge would speed enforcement of the relevant act. *Solar Turbines Inc. v. Seif,* 879 F.2d 1073, 1080 (3rd Cir.1989).

Once a court has determined that an agency action is final, the next consideration is whether judicial review of the action is precluded by statute. *E.g., Abbott Laboratories v. Gardener,* 387 U.S. 136, 139–40, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967) (in determining whether to review a regulation that had not been enforced, the Court first considered whether or not Congress intended to forbid pre-enforcement review); *Southern Pines Associates, by Goldmeier v. U.S.,* 912 F.2d 713, 716 (4th Cir.1990) (Congress intended to preclude judicial review of EPA's issuance of an order of compliance under the CWA); *Hoffman Group, Inc. v. E.P.A.,* 902 F.2d 567, 569 (7th Cir.1990) (by providing a detailed mechanism for judicial review of a compliance order issued by EPA pursuant to the CWA, Congress impliedly precluded judicial review of a compliance order prior to enforcement). In determining whether or not a statute precludes judicial review, courts must "look not only to its language, but also to 'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Southern Pines Associates,* 912 F.2d at 715 (quoting *Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984)).

If an agency action is final and if judicial review is not precluded by statute, courts must then consider whether or not the issue presented is ripe. In *Abbott Laboratories,* 387 U.S. at 148–49, 87 S.Ct. at 1515–16, the Supreme Court explained that the rationale for ripeness is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." The assessment of whether an issue before the court is ripe for judicial review requires an assessment of "(1) the fitness of the issue for judicial resolution, and (2) the hardship to the parties if judicial review is withheld. An issue is fit for judicial review if it is essentially legal and if the agency's resolution of it is final." *Consolidated Rail Corp. v. U.S.,* 812 F.2d 1444, 1451 (3rd Cir.1987).

In determining whether or not to review an agency action, a court should also consider whether the plaintiff has exhausted available administrative remedies. It is a well settled rule that the courts will not provide a method of relief "for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Bethlehem Steel Corp. v. EPA,* 669 F.2d 903, 907 (3rd Cir.1982), *quoting Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). It is also true, however, that the exhaustion of administrative remedies will not be required prior to judicial intervention where the administrative procedures available are inadequate; *NLRB v. Marine Workers,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706 (1968); or do not exist; *Deltona Corp. v. Alexander,* 682 F.2d 888, 893 (11th Cir.1982).[12] When exhaustion is not statutorily mandated, the decision to require it in a given case is a matter of sound judicial discretion. *Facchiano v. U.S. Dept. of Labor,* 859 F.2d 1163, 1167 (3rd Cir.1988), *cert. denied,* 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989). The requirement of exhausting administrative remedies advances several policies. First, the exhaustion doctrine recog-

---

12. One commentator has aptly indicated that: Exhaustion law is too complex for a meaningful simple statement of when exhaustion is required and when it is not, but clearly the courts generally do what they obviously should do—they weigh the reasons pulling in each direction and decide whether requiring exhaustion is desirable. When the agency is causing or threatening to cause irreparable injury through clearly illegal action, exhaustion is unlikely to be required, and when a disputed question seems to be within an agency's specialization and the agency can provide satisfactory relief, exhaustion is likely to be required.

4 K. Davis, Administrative Law Treatise, § 26:1 at 414 (2d ed. 1983).

nizes the congressional decision that agencies are to make certain initial determinations. *Republic Industries v. Central Pa. Teamsters,* 693 F.2d 290, 293 (3rd Cir.1982). Second, it recognizes the value of the special experience and expertise developed by the agencies and respects the administrative autonomy the agencies need to remain effective. *Id.* Undue interference by the courts into the administrative process could have the undesirable effect of weakening the viability of the agencies. Third, judicial economy is maximized by the exhaustion doctrine because it allows the agencies an opportunity to "vindicate a complaining party's rights" and encourages an agency developed factual record upon which a court can rely. *Id.; see also Heywood v. Cruzan Motors, Inc.,* 792 F.2d 367, 370 (3rd Cir.1986). Furthermore, exhaustion recognizes that allowing the agency to make the initial determination may result in the avoidance of controversy and the need for subsequent judicial review. *FTC v. Standard Oil of Cal.,* 449 U.S. 232, 244 n. 11, 101 S.Ct. 488, 495 n. 11, 66 L.Ed.2d 416 (1980).

### C. *Analysis of Plaintiff's Claims*

#### 1. The Corps' Jurisdiction

█ Several Circuit Courts have examined whether or not the issuance of a compliance order or cease and desist order by the EPA or the Corps constitutes a reviewable agency action. The Fourth and the Seventh Circuit Courts of Appeals have held that a landowner's pre-enforcement challenge to the EPA's issuance of a compliance order pursuant to the Clean Water Act is not reviewable. These two Courts of Appeals have reasoned that the statutory scheme of the Clean Water Act precludes judicial review of these orders unless the agency brings an enforcement action against the landowner. *Southern Pines Associates,* 912 F.2d at 715 (Court of Appeals for the Fourth Circuit reasoned "the statutory structure and history of the CWA provides clear and convincing evidence that Congress intended to exclude this type of action"); *Hoffman Group, Inc.,* 902 F.2d at 569 (Court of Appeals for the Seventh Circuit reasoned "[h]aving provided a detailed mechanism for judicial consideration of a compliance order via an enforcement proceeding, Congress has impliedly precluded judicial review of a compliance order except in an enforcement proceeding").

The Court of Appeals for the Eleventh Circuit used different reasoning to decline review in *Deltona Corp.* In that case, the court determined that judicial review of a landowner's challenge to the extent of the Corps' jurisdiction would be improper on the ground of exhaustion. *Deltona Corp.,* 682 F.2d at 893–94. The Court of Appeals reasoned that since the Corps had not yet had the opportunity to assess the extent of its jurisdiction, permitting the Corps to do so prior to judicial review would further the policies behind the doctrine of exhaustion. *Id.* at 893.

In contrast, courts in the Ninth Circuit will review the Corps' issuance of a compliance order or cease and desist letter. These courts review the agency action using the arbitrary and capricious standard. *See, e.g., Swanson v. United States,* 600 F.Supp. 802 (D.Idaho 1985), *aff'd* 789 F.2d 1368 (9th Cir.1986) (Corps' jurisdiction affirmed in the context of a pre-enforcement challenge brought by the landowner); *Bailey v. United States Army Corps of Engineers,* 647 F.Supp. 44 (D.Idaho 1986) (court reviewed the Corps' determination of jurisdiction using an arbitrary and capricious standard).

In reviewing the evidence in this case, the Court notes that there is little genuine dispute regarding whether or not the Corps has jurisdiction over at least a portion of the Plaintiff's property. However, the Court finds that reviewing the Corps' jurisdiction over the property would be inappropriate at this time. Although the district engineer's assertion of jurisdiction may be a "final" agency action by virtue of 33 C.F.R. § 320.1(a)(6), this alone does not entitle the Plaintiff to pre-enforcement review. This Court is not convinced that the district engineer's assertion of jurisdiction constitutes a final agency action as defined by the Supreme Court or the Court of Appeals for the Third Circuit.

Although the Court of Appeals for the Third Circuit has not addressed the issue of pre-enforcement review of an agency's assertion of jurisdiction pursuant to the CWA, the Court of Appeals has held that a compliance order issued by the EPA pursuant to the Clean Air Act was not reviewable unless the EPA began enforcement proceedings. In *Solar Turbines*, 879 F.2d at 1080–81, the court reasoned that issuing a compliance order was not a final agency action. It noted that the compliance order represented the agency's definitive position that the Clean Air Act was being violated. However, because no criminal or civil penalties would accrue from the order absent an enforcement proceeding by EPA, the court of appeals held that the order was not a final agency action. *Id.*

By analogy, the assertion of jurisdiction by the Corps in this case is not the final action of the Corps. The rules promulgated pursuant to section 404 contemplate that the district engineer will have several options upon determining that a violation of the CWA has occurred. After notifying the responsible parties, the district engineer may attempt to resolve the violation without adjudication by explaining to the violator what must be done in order to comply with the CWA. Resolution of the problem might be achieved by granting an after-the-fact permit. In some cases, the district engineer may recommend that suit be brought against the violator. Therefore, the engineer's cease and desist order, standing alone, does not constitute the final agency action. It carries no legal consequences for the Plaintiff and it does not determine the rights and obligations of the Plaintiff or the Corps. Additionally, judicial review of the actions taken thus far by the Corps would not facilitate the speedy resolution of the dispute between the parties.

The Plaintiff argues that the Corps' assertion of jurisdiction is a final action because it requires the Plaintiff to bear the cost of obtaining an after-the-fact permit. The Court is not persuaded by this argument. In *FTC v. Standard Oil*, 449 U.S. at 242–43, 101 S.Ct. at 494–95, the Supreme Court held the FTC's issuance of a complaint was not reviewable because it was not a final agency action. The Court noted that while the burden of defending a lawsuit would be substantial, this did not excuse the courts from applying the finality rule. *Id.* at 244–45, 101 S.Ct. at 495–96. Therefore, this Court must apply the finality rule even though the cost of obtaining an after-the-fact permit might be substantial.

Furthermore, this Court finds the reasoning of the Fourth and Seventh Circuits to be persuasive in this case. If landowners are allowed to challenge the Corps' assertion of jurisdiction prior to an enforcement action or prior to the completion of the permitting process, the Corps will be forced into litigation. This frustrates the flexible scheme for resolving violations that is set out in the CWA and the rules. Therefore, this Court declines to review the Corps' assertion of jurisdiction at this time because the regulatory scheme of the CWA impliedly precludes such a review.

Considerations of ripeness also militate against a judicial review of the Corps' jurisdiction at this stage of the proceedings. The Corps may grant the Plaintiff's a permit to develop the property according to the Plaintiff's plans which would make the Corps' assertion of jurisdiction an action of minimal consequence. Alternatively, the Corps may decline to issue the permit and the Plaintiff's use of the property may be severely restricted. Although the Corps has asserted jurisdiction over the Plaintiff's property, the ultimate effects of that action are not yet known. The Corps' assertion of jurisdiction does not create a controversy which is concrete enough for judicial review.

The Corps' assertion of jurisdiction does not appear final when analyzed according to the criteria set out by the Third Circuit. Furthermore, this Court is persuaded that the regulatory scheme of the CWA impliedly precludes review of the Corps' assertion of jurisdiction at this time. Finally, even if the Corps' assertion of jurisdiction constitutes a final agency action and the CWA does not preclude review, the issue will not be ripe until the ultimate effect of

the Corps' assertion of jurisdiction is known. The Court notes that the courts in the Ninth Circuit analyze this issue differently but declines to follow that analysis. Therefore, this Court declines to review the Corps' jurisdiction over the Plaintiff's property at this time.

### 2. The Corps' Actions During the Permitting Process

■ The Plaintiff's second claim involves a challenge to the Corps' conduct during the permitting procedure. The Plaintiff argues that because Walcek submitted part of the application for a permit in February of 1988 and the Corps did not contact Walcek regarding the permit until December of 1988, the Corps has impermissibly delayed processing the application. D.I. 15 at 10. Although there is a factual dispute regarding the accuracy of the ENG FORM 4345 submitted by the Plaintiff as part of the application, this dispute is not material. The Plaintiff does not dispute that Walcek has not submitted all of the items requested by the Corps. One of the missing items appears to be required by 33 C.F.R. § 325.2(b)(2). The Plaintiff has not claimed that it has filed a complete application and the Corps is impermissibly refusing to act upon it. Indeed, the Plaintiff argues that the Corps is abusing its discretion by requiring these additional items before acting on the permit application because the Corps has already determined it will not give the Plaintiff a permit.

Until the Plaintiff exhausts its administrative remedies by completing the application, this Court declines to review the Corps' actions. The Corps, as the expert in wetlands management, is in a much better position than this Court to determine what information it needs to evaluate a permit application. By requiring the permit process to run its course prior to judicial interference, it may well be that this matter can be resolved to the satisfaction of the Plaintiff. To allow a challenge to the information required to complete the permit process or a challenge to the timing of the actions by the Corps at this stage of the proceedings would constitute an unwarranted interference with the Corps' processes. In addition, requiring the Plaintiff to complete the permitting process before challenging the Corps actions will allow this Court to review the Corps' actions, if such a review becomes necessary, in a single proceeding based on a fully developed record. To review portions of the Corps' determinations at this stage of the process would tend to foster piecemeal litigation.

There are several recognized exceptions to the exhaustion doctrine. The Third Circuit has recognized that exhaustion may not be appropriate: "(1) when the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury, ... (2) when resort to the nonjudicial remedy would 'clearly and unambiguously violate statutory or constitutional rights,' ... and (3) when exhaustion would be futile...." *Republic Industries*, 693 F.2d at 293 (citations omitted). The court has said that "these exceptions apply only in 'extraordinary circumstances,' ... when the remedy to be exhausted, though supported by the underlying policy justifications of the doctrine, should not be compelled because of some countervailing consideration." *Id.* (citations omitted).

Here, the Plaintiff has not shown that it would suffer irreparable harm by the Court's dismissal of the complaint on exhaustion grounds. The Plaintiff's expense of compliance with the permit process does not amount to such a harm. *Cf. Boise Cascade Corp. v. F.T.C.*, 498 F.Supp. 772, 778 (D.Del.1980). The harm, if any, suffered by the Plaintiff has not been shown to be any greater than that inuring to any other landowner wishing to develop property.

The Plaintiff has not alleged any violation of statutory or constitutional rights. Further, this Court finds that resort to the permit process would not clearly violate any statutory or constitutional rights of the Plaintiff.

In addition, this Court finds that the Plaintiff has failed to show that requiring exhaustion of the permit process would be futile. The Plaintiff claims that completing the application would be futile because he

542

has been advised by Mr. Hassel of the Corps that the permit would not be granted. D.I. 15, Ex. 1. Mr. Hassel denies making such a statement. D.I. 14, Ex. II.

This factual dispute is not material. Section 404 of the CWA and the rules promulgated pursuant to that section prescribe the procedure the Corps must use in determining whether or not to grant a permit. If an agent of the Corps offered an opinion without following those procedures, he was without authority to do so and his opinion is not binding upon the Corps. *See Deltona Corp.*, 682 F.2d at 891 (unofficial approval of development plans by officials of the Corps did not estop the Corps from refusing to grant section 404 permits); *cf. Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) ("anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority"). Even if Mr. Hassel did tell the Plaintiff that the permit would never be granted, the Plaintiff is not entitled to rely on Mr. Hassel's opinion as the opinion of the Corps. The Plaintiff cannot rely on an unauthorized opinion to show that completing the permit process would be futile. Even when all the factual disputes are resolved in favor of the Plaintiff, this Court finds that the Corps had carried its burden of showing that the Plaintiff's claim should be dismissed on the ground of failure to exhaust administrative remedies.

### 3. The Takings Claim

■ The Plaintiff's complaint refers to a "loss of use damage claim" and the Plaintiff's brief in opposition to summary judgment refers to *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The Plaintiff seems to be requesting that this Court determine whether or not the Corps' actions to date constitute a temporary or permanent taking of the Plaintiff's property by the Federal Government.

This issue is clearly not ripe for review. Even if the Corps has improperly asserted jurisdiction over a portion of the Plaintiff's property or had abused its discretion in the permitting process, until the process is complete it will not be possible to determine how long the Plaintiff was deprived of the use of its property by the Corps' actions. Until the Corps has made a final determination on the Plaintiff's permit application, the extent of loss the Plaintiff has sustained is not known. Therefore, the Plaintiff's loss, if any, is not yet concrete.

Furthermore, it would require an extremely detailed factual inquiry to determine: (1) if the Corps has abused its discretion; (2) if that abuse did in fact cause the Plaintiff to lose the use of its property; and (3) the extent of the loss caused by the Corps. Conducting such an inquiry at this stage of the proceedings would interfere with the permit process and would resolve only a portion of this matter. Until the permit process is complete, this Court declines to conduct such an inquiry.

### CONCLUSION

This case involves sensitive matters with a serious potential for harm to delicate environmental systems. The Court must consider the potential harm which could irreparably befall the environment by prematurely stripping this case from the Corps' supervision. The Court has determined that the Plaintiff's complaint must be dismissed because the Corps' action is not yet final and because the Plaintiff raises issues not yet ripe for judicial intervention. The complaint must also be dismissed for failure to exhaust administrative remedies. Essentially, the time for the Plaintiff to contest the issues raised in the complaint is when the pending permit application has been completely processed by the Corps.