**Orville BAILEY and Janet Bailey, husband and wife, Plaintiffs,**

v.

**The UNITED STATES of America, acting By and Through the UNITED STATES ARMY CORPS OF ENGINEERS; Caspar Weinberger, Secretary of Defense; John O. Marsh, Jr., Secretary of the Army; and the United States Environmental Protection Agency, and L.M. Thomas as Administrator of the Environmental Protection Agency, Defendants.**

Civ. No. 85–3147.

United States District Court,
D. Idaho.

Oct. 16, 1986.

D. Blair Clark, Thomas C. Frost, Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, Idaho, for plaintiffs.

Bonnie A. Sullivan, Beth S. Ginsberg, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Defense Section, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

### I. FACTS

This case arises out of the United States Army Corps of Engineers' (Corps) asser- tion of regulatory jurisdiction over approxi- mately fifty acres of land adjacent to Priest Lake in Nordman, Idaho. Defendants have asserted jurisdiction pursuant to Section 404 of the Clean Water Act, 33 U.S.C. § 1344 (1980).

The plaintiffs in this action own a sixty- five acre parcel of property adjoining Priest Lake. Prior to June of 1984, the Corps received numerous complaints from neighbors of the plaintiffs complaining that plaintiffs were filling sand onto their prop- erty. On July 24, 1984, biologists from the Walla Walla Corps District conducted a site investigation of plaintiffs' property. The biologists found approximately fifty acres of inundated areas and areas consisting of soils saturated at or near the surface, and covered by a predominance of wetland plants. On July 30, 1984, plaintiffs re- ceived a notice of violation from the Corps stating that they had engaged in unautho- rized filling of wetlands. The notice fur- ther advised the plaintiffs that any addi- tional fill without a permit would constitute a knowing and willful violation of the Clean Water Act.

On April 25, 1985, the Bonner County Planning and Zoning Commission (Commis- sion) held a public meeting to consider the plaintiffs' request to rezone their property from rural to recreational use, to allow for residential development. Based on com- ments received from the Corps, state agen- cies, and private individuals, the Commis- sion decided to postpone the rezoning deci- sion until further investigation of the land by the Corps. On January 8, 1986, the Walla Walla District of the United States Army Corps of Engineers submitted a final wetland determination which concluded that the plaintiffs' property consisted of approximately fifty acres of wetlands. The Corps made its determination on the basis of the administrative record developed dur- ing the investigation of the plaintiffs' prop- erty.

On October 28, 1985, plaintiffs filed a Complaint with this court against the Unit-

ed States. Count One of the Complaint asks the court to declare that plaintiffs' property is not a wetland under the jurisdiction of the defendants. In Count Two, plaintiffs seek a declaration from the court quieting title to the property free from the Corps' regulatory jurisdiction. Count Three alleges that the Corps violated plaintiffs' due process rights by intervening in the Bonner County Zoning Commission's proceedings. Count Four claims that the Corps' assertion of jurisdiction over the property constitutes a taking under the fifth amendment of the United States Constitution requiring payment of just compensation. The United States seeks summary judgment on Count One of plaintiffs' Complaint and seeks to dismiss the other counts of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

In ruling upon the motions presented by the Defendant United States, the court must look to the standards of the Administrative Procedure Act, 5 U.S.C. § 706 (1980). This Act provides in part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions bound to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

In applying the "arbitrary and capricious" standard of the Administrative Procedure Act, the district court should not conduct a *de novo* review, but should only review the administrative record already in existence. *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715

F.2d 897 (5th Cir.1983), the Fifth Circuit held that the wetlands determination is the kind of administrative determination that must be decided by a review of the administrative record alone. The Fifth Circuit stated:

> The wetlands determination is precisely the type of agency decision that is normally subject to limited judicial review.... The determination itself, which requires an analysis of the types of vegetation, soil and water conditions that would indicate the existence of wetlands, is a kind of scientific decision normally accorded significant deference by the courts.... De novo review would permit the courts to intrude into an area in which they have no particular competence, and the presentation of the scientific evidence at both the administrative and judicial levels of the proceeding would result in inefficiencies and delays where they are most harmful.... The arbitrary and capricious standard affords the proper deference to the agency's scientific expertise, while the requirement that a court engage in a thorough indepth review of the administrative record to ascertain whether the agency has considered all of the relevant factors and whether the agency's decision is rational ... assures that deference to the agency does not result in abdication of judicial responsibility.

*Id.* at 906–907 (citations and footnotes omitted). In the instant case, the wetland determination by the Corps will be overturned only if found to be arbitrary, capricious or an abuse of discretion.

## III. ANALYSIS

### A. *Count One*

Plaintiffs challenge the Corps' determination that plaintiffs' property constitutes a wetland. Wetlands are defined as:

> Those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil

conditions. Wetlands generally include swamps, marshes, bogs and similar areas.

33 C.F.R. § 323.2(c) (1986). The Clean Water Act prohibits any discharge of dredge or fill materials into navigable waters unless authorized by a permit issued by the Corps. 33 U.S.C. § 1344 (1980). Navigable waters include "all interstate waters including interstate wetlands." 33 C.F.R. § 323.2(a)(2) (1986).

In the recent United States Supreme Court decision of *United States v. Riverside Bayview Homes,* 474 U.S. ——, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), the court further clarified the definition of wetlands for purposes of the Clean Water Act. In *Bayview,* the court overturned a Sixth Circuit decision which held that an area was not a wetland if it was not subject to frequent flooding by adjacent navigable waters. The court, citing the "plain language" of 33 C.F.R. § 323.2(c), concluded that an area does not have to be subject to inundation or frequent flooding by an adjacent body of water to constitute a wetland. An area was a wetland if saturation, either by surface or groundwater, was sufficient under normal circumstances to support wetland vegetation. *Id.* 106 S.Ct. at 460–61.

### 1. *The Administrative Report*

In the wetland determination report of January 8, 1986, the Corps classified the fifty acres of plaintiffs' property into four distinct units. The wetland determination was based on an analysis of three categories: (1) nature of the soil; (2) hydrology (circulation of water); and (3) vegetation.

#### (a) *Area I*

In Area I the soils consisted of one to two feet of herbaceous plant material (peat). This material was floating on the surface of the soil at the time of the investigation. The Corps determined that this condition existed throughout the year. The Corps' scientists also found approximately 60 percent of Area I to be comprised of vegetation which requires saturated soil conditions in order to survive.

#### (b) *Area II*

In Area II the Corps found that soils in the area consist of six to twelve inches of dark peat materials which was indicative of hydric soil. This area was also saturated at the surface, as the engineers' feet got wet as they walked through the area. Eight-five percent of the vegetative cover was the type which required saturated soil conditions in order to survive.

#### (c) *Area III*

Area III had soils of a six-inch layer of highly undecomposed peat material. The Corps noted no inundation or surface saturation at the time of investigation, but there was a layer of encrusted detritus on the surface which indicated that the area did flood. Furthermore, the soil in this area was saturated at a depth of approximately eight inches. The vegetation was dominated by Douglas spiraea which formed a brushy thicket over the area. This vegetation is commonly found along wet streambanks and in scrub shrub wetlands in the region.

#### (d) *Area IV*

The soil in Area IV was also dominated by highly decomposed herbaceous plant material. The soil was saturated at the surface during the investigation. The Corps noted that since precipitation for this six and a half month period prior to investigation was far below normal, the condition of saturation existed normally throughout much, if not all, of the year. In addition, Area IV contained a 65 percent vegetative cover of wetland species.

The court, having limited its review to the Administrative Record as required by the Administrative Procedure Act, holds that the determination that fifty acres of plaintiffs' land constitutes wetlands was not arbitrary, capricious, or an abuse of discretion. It is true that the land in Area III was not saturated at the surface. However, as stated by the United

States Supreme Court in the *Bayview* decision, there is no requirement that an area be saturated at the surface to be characterized as a wetland. It is sufficient if saturation by either surface or ground water can support wetland vegetation. It is evident, in light of the wetland vegetation present in this area, that the soil under normal circumstances does support wetland vegetation.

■ Plaintiffs have failed to present any evidence to refute the above determination. Dr. Raymond A. Soltero, a consultant for plaintiffs and a professor of biology at Eastern Washington University, concluded that, as a result of the construction of the Priest Lake Dam, wetlands were created on plaintiffs' property because "[t]he maintenance of a higher water table has resulted in soil saturation beyond that generally associated with spring runoff." Administrative Record at 141. Dr. Soltero's report concluded that the "alteration of the natural hydrological regime has allowed for the succession and establishment of hydrophylic vegetation characteristic of a wetlands." Administrative Record at 141. Plaintiffs contend that even if the court finds that wetlands exist on the property, the fact that they were "artificially created" through construction of the Priest Lake Dam negates the court's assertion of regulatory jurisdiction under the Clean Water Act. This argument is untenable in the face of the decision by this court in *Swanson v. United States*, 600 F.Supp. 802 (D.Idaho 1985). In *Swanson,* some property owners argued that certain outer perimeter waters of Lake Pend Oreille that were created by the construction of the Albeni Falls Dam were not waters subject to the regulation of the United States Corps of Engineers. This court, quoting from the decision of *Philadelphia Co. v. Stimson*, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912), held that, "[t]he alterations produced in the course of years by the action of the water do not restrict the exercise of Federal control in the regulation of commerce. Its bed may vary and its banks may change, but the Federal power remains paramount...." *Swanson v.*

*United States,* 600 F.Supp. at 808. This court held that "[u]nder the *Stimson* rationale, Congress's power to regulate commerce extends as the bounds of navigable waters are altered." *Id.* In *United States v. Ciampitti*, 583 F.Supp. 483 (D.N.J.1984), the district court held that:

[T]he fact that part of the area *may* have become wetlands because of a *manmade* connection between the site and title waterways is not dispositive of the Corps' jurisdiction.... federal jurisdiction is determined by whether the site is presently wetlands and not by how it came to be wetlands.

*Id.* at 494 (emphasis in original).

The affidavit presented by Thomas Blessinger also fails to refute the final wetlands determination made by the Corps. Mr. Blessinger admitted that the soils of the plaintiffs' property do retain water and that the main limitation to development on the land is "flooding, wetness, frost heaving, and excess humus." Affidavit of Thomas D. Blessinger, filed June 9, 1986, at 5. In sum, plaintiffs have failed to present evidence that would indicate that the Corps' wetland determination was arbitrary, capricious, or not in accordance with law. Summary judgment is appropriate as to Count One of the Complaint.

### B. *Count Two*

In Count Two, plaintiffs seek a declaration from the court quieting title to the property free from the Corps' regulatory jurisdiction. In light of the court's holding in Count One above, this claim will be denied as moot. The Corps has properly asserted regulatory jurisdiction over plaintiffs' property.

### C. *Count Three*

■ In Count Three of their Complaint, plaintiffs charge the Corps with violating their fifth amendment rights to due process. The claim is based on the alleged intervention by the Corps in the Bonner County Planning and Zoning Commission's proceedings to determine whether plain-

tiffs' land could be zoned for residential use. Plaintiffs have failed to present any evidence that would indicate a violation by defendants of their due process rights. The Commission specifically requested a report by the Corps on their position as to the plaintiffs' property. A public hearing was then held on the matter on April 25, 1985. At that time, various federal and state agencies, as well as private individuals, urged the Commission to deny or postpone the decision on the plaintiffs' proposed rezoning. The Corps' participation in the board meeting neither deprived plaintiffs of notice and an opportunity to be heard, nor did it preclude the Commission from acting independently on the matter. Count Three of plaintiffs' Complaint will be dismissed.

### D.   *Count Four*

Plaintiffs finally seek a determination by the court that the Corps' assertion of jurisdiction over their property constitutes a taking under the fifth amendment of the United States Constitution. This argument is untenable in light of the decision in *United States v. Riverside Bayview Homes*, 474 U.S. ——, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). In *Bayview*, the United States Supreme Court stated that "[o]nly when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question, can it be said that a taking has occurred." *Id.* 474 U.S. at ——, 106 S.Ct. at 459, 88 L.Ed.2d at 426. Thus, in this case before the court can begin to consider the taking question, plaintiffs must apply for and subsequently be denied an application for a permit to dredge and fill. Count Four will be dismissed.

### IV.   ORDER

For the reasons stated herein, IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment on Count One of plaintiffs' Complaint should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss Counts Two, Three and Four of plaintiffs' Complaint should be, and is hereby, GRANTED.

A judgment consistent with this opinion shall be entered.