MEMORANDUM DECISION AND ORDER
WINDER, Chief Judge.
This matter is before the court on Defen­dant United States, et al.’s (“Defendants”) Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Pro­cedure 12(b)(1). A hearing on the motion was held on March 22,1994. At the hearing, Joseph W. Anderson, Katherine A. Dreyfus, Rebecca A. Lloyd, and Chris Mangan repre­sented Defendant. Paul M. Seby and Clay N. Stucki represented Plaintiffs Brandt and Venice Child (“Plaintiffs” or the “Childs”). Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has fur­ther considered the law and facts relating this motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

I. BACKGROUND

The property in question is 400 acres of real property located in Kane County, Utah, owned by the Woodland Family Trust (the “Property”). A portion of the Property con­tains three naturally occurring spring-fed ponds. On December 27, 1990, Mr. Michael Schwinn of the Army Corps of Engineers (the “Corps”) performed an on-site inspection of the Property and determined that Mr. Child had improperly filled .04 acres of what Schwinn determined to be wetlands under the Clean Water Act (the “CWA” or the “Act”).[1] On January 16, 1991, Schwinn met with Plaintiffs to discuss the improper filling. At that time, Schwinn instructed Mr. Child to remove the fill he had placed on the wetlands area, or the Corps would consider Mr. Child to be in violation of the CWA after January 31, 1991. Accordingly, Mr. Child removed the alleged fill material from the relevant area, as instructed, on or before January 31, 1991.
By letter dated February 1, 1991, Schwinn summarized the oral agreement, stating that the fill would be removed by January 31, 1991, and that upon completing the agreed-­upon plan, as verified through a compliance inspection, the Corps would consider the vio­lation resolved. Schwinn’s letter also noti­fied Mr. Child that his property contained “wetlands” and “waters of the United States” and was therefore subject to the Corps’ juris­diction under the CWA. The same letter stated that the Corps had determined that a road on the Property was in compliance with the Corps’ CWA regulations.[2] By letter dat­ed April 2, 1991, the Corps informed Mr. Child that pursuant to an inspection on March 12,1991, the Corps considered the fill violation to be resolved.
On September 21, 1993, Plaintiffs filed a Complaint against Defendants seeking an or­der of declaratory judgment “declaring that all of the property belonging to Woodland Family Trust ... is not a ‘navigable water,’ is not a ‘water of the United States,’ and is not in any way subject to jurisdiction under the Clean Water Act.... ” Compl. at 9. Plaintiffs also seek a permanent injunction forever restraining the Corps and the Envi­ronmental Protection Agency (the “EPA”) from asserting any type of jurisdiction under the CWA over the Property. ■ Further, Plain­tiffs allege that
*1529 a. The Army Corps’ and/or EPA’s pur­ported “interpretation” and/or “construc­tion” of “wetlands” as applied to the Wood­land Family Trust property exceeds the scope of the agency’s or agencies’ statutory authority;
b. As applied, the Army Corps’ and/or the EPA’s purported “interpretation” and/or “construction” of “wetlands” would exceed Congress’ power to regulate inter­state commerce under Article I, Section 8 of the United States Constitution;
c. The Army Corps’ and/or EPA’s actions in expanding, and in effect amending, the “wetland definition” under the guise of purported “interpretation” and/or “con­struction” of “wetlands” constitutes rule-­making and as such is invalid because the rulemaking was and is being carried out in violation of the public notice and comment provisions of the Administrative Proce­dures Act, 5 U.S.C. § 553; and
d. The government’s assertion of Clean Water Act jurisdiction as applied violated Woodland Family Trust’s Constitutional rights of due process and equal protection under the law.
Compl. at 7-8.
Although Plaintiffs may apply for a permit to discharge fill into the wetlands on the Property under the procedures provided un­der the CWA and the Corps’ regulations, they have not done so. Additionally, the United States has not initiated a judicial action to prevent Plaintiffs from conducting any activities on the property, not has it otherwise attempted to enforce the CWA.
In moving to dismiss Plaintiffs’ Complaint for lack of subject matter jurisdiction, Defen­dants contend that the CWA precludes the type of “pre-enforcement review” Plaintiffs seek. Defendants also argue that the Ad­ministrative Procedures Act (the “APA”) does not confer jurisdiction, both because the CWA precludes judicial review of pre-en-­forcement actions and because there is no final agency action for review. Defendants further argue that Plaintiffs’ claim that De­fendants violated APA rulemaking require­ments is without merit, as are Plaintiffs’ con­stitutional claims. Defendants contend that Plaintiffs’ constitutional concerns will be ade­quately addressed if and when there is an enforcement proceeding or a challenge to a denial of a permit by the Corps. Finally, Defendants argue that the issues raised are not ripe for review.

II. THE CLEAN WATER ACT

The objective of the CWA is “to restore and maintain the chemical, physical, and bio­logical integrity of the Nation’s waters.” 33 U.S.C.A. § 1251(a) (West 1986 & Supp.1994). To achieve this goal, the CWA prohibits the discharge of any pollutants, including dredged or fill material, except in accordance with the Act. Id. § 1311(a).
The CWA, however, authorizes the Secre­tary of the Army (the “Secretary”) to issue permits “for the discharge of dredged or fill material into the navigable waters at speci­fied disposal sites.” Id. § 1344(a). Subject to certain provisions in the CWA, each per­mit shall be based on the application of guidelines developed by the Administrator of the EPA in conjunction with the Secretary. Id. § 1344(b). Pursuant to that section of the CWA, the EPA developed regulations that are published at 40 C.F.R. Pt. 230. The Corps’ regulations governing the permitting process are published at 33 C.F.R. Pts. 320-­30.[3]
Part 320 contains the Corps’ general regu­latory policies for evaluating permit applica­tions.[4] Factors to consider include, among other things, “conservation, economics, aesth­etics, general environmental concerns, wet­ *1530 lands, historical properties, fish and wildlife values, flood hazards, floodplain values, land use, ... recreation, water supply and conser­vation, water quality, ... considerations of property ownership and, in general, the needs and welfare of the people.” Id. Pt. 320. Part 325 governs the permitting pro­cess and lists the items that must be submit­ted with an application for a § 404 permit.
The discharge of dredged or fill material into navigable waters without a permit vio­lates the Act. 33 U.S.C.A. § 1311(a).[5] The CWA defines “navigable waters” as “waters of the United States, including the territorial seas.” Id. § 1362(7). Further, the EPA and the Corps have adopted regulations defining “waters of the United States” to include nu­merous bodies of water, including wetlands, “the use, degradation or destruction of which could affect interstate ... commerce.”[6] 33 C.F.R. § 328.3(a)(2), (3) (the Corps’ regula­tions); 40 C.F.R. 230.3(s)(2), (3) (the EPA’s regulations); see also 33 C.F.R. § 328.-­3(a)(4)-(7); 40 C.F.R. § 230.3(s)(4)-(7).
Enforcement of the CWA is shared jointly by the Corps and the EPA. In cases of unpermitted discharge of fill material, the CWA and its implementing regulations pro­vide the EPA and the Corps with a choice of methods for enforcing the Act: the EPA may issue compliance orders to violators of the Act, it may commence an enforcement action in the United States District Court, and it may assess an administrative penalty. See 33 U.S.C.A. § 1319(a), (b), (g).[7] Similarly, upon a finding that a person is illegally en­gaging in dredge and fill activity, a district engineer of the Corps will notify the respon­sible persons, 33 C.F.R. § 326.3(c),[8] and may later determine whether to recommend that legal action be taken. Id. § 326.5. If a violation continues, the United States may bring an enforcement action in district court under § 309(b), 33 U.S.C.A. § 1319(b). The government, however, has discretion regard­ing whether and when to bring an enforce­ment action. See Harmon Cove Condomini­um Ass’n, Inc. v. Marsh, 815 F.2d 949, 952-­53 (3d Cir.1987).

III. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed­eral Rule of Civil Procedure (“Rule”) 12(b)(1) is a motion to dismiss for lack of subject matter jurisdiction. In such a motion, Plain­tiffs carry the burden of establishing jurisdic­tion. Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir.1991). “‘A court lacking jurisdiction cannot render judg­ment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.’” Tuck v. United Servs. Auto. Ass’n, 859 F.2d 842, 844 (10th Cir.1988) (emphasis in original) (quoting Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir.1974)), cert. de­nied, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989).

IV. DISCUSSION

The issue in the instant case is whether this court has subject matter jurisdiction over Plaintiffs’ action challenging the Corps’ assertion of jurisdiction over Plaintiffs’ Prop­erty.

*1531
A STATUTORY PRECLUSION UNDER THE CWA

The APA states that judicial review may be obtained for a final agency action under the APA except to the extent that “statutes preclude judicial review.” 5 U.S.C.A. § 701(a)(1) (West 1977); see Abbott Labs. v. Gardner, 387 U.S. 136, 139-40, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (stat­ing that first question is whether Congress intended to forbid pre-enforcement review in determining whether to review regulation that had not been enforced); Thomas Brooks Chartered v. Burnett, 920 F.2d 634, 641 (10th Cir.1990) (recognizing that judicial review of agency action is generally allowed except where statutes preclude judicial review).
In determining whether a statute pre­cludes judicial review, courts look not only to the statute’s express language, but also to “the structure of the statutory scheme, its objectives, its legislative history, and the na­ture of the administrative action involved.” Block v. Community Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984); Thunder Basin Coal Co. v. Reich, — U.S. -, -, 114 S.Ct. 771, 776, 127 L.Ed.2d 29 (1994). After examining the Block factors, courts that have consid­ered the same jurisdictional arguments raised by Plaintiffs here have held that the CWA precludes review of pre-enforcement actions by the Corps or the EPA, even where those actions include final administrative or­ders directing that filling of wetlands cease.
For example, in Hoffman Group, Inc. v. Environmental Protection Agency, 29 Env’t Rep.Cas. (BNA) 1180, 1182 (N.D.Ill.1989), aff'd, 902 F.2d 567 (7th Cir.1990), a residen­tial developer filed a complaint seeking re­view of an EPA administrative order requir­ing it to stop filling its wetlands and to restore the areas it had already filled. In holding that the CWA precludes such pre-­enforcement review of compliance orders, the district court observed that
pre-enforcement review of compliance or­ders would render that option a meaning­less alternative to bringing a civil enforce­ment action at the outset, and effectively eliminate the compliance order as a means of expeditiously abating violations of the CWA without resort to judicial process. It is doubtful Congress intended such a re­sult.
Id. at 1182. On appeal, the United States Court of Appeals for the Seventh Circuit examined the provisions of the CWA and determined that “[hjaving provided a de­tailed mechanism for judicial consideration of a compliance order via an enforcement pro­ceeding, Congress has impliedly precluded judicial review of a compliance order except in' an enforcement proceeding.” Hoffman, 902 F.2d 567, 569 (7th Cir.1990).
Similarly, the United States Court of Ap­peals for the Fourth Circuit agreed with the Seventh Circuit’s decision in Hoffman Group and also held that the CWA precludes review of pre-enforcement agency actions. See Southern Pines Assocs. v. United States, 912 F.2d 713 (4th Cir.1990). In Southern Pines, the EPA issued a “Findings of Violation and Order for Compliance,” informing the part­nership that it had violated § 301(a) of the CWA by discharging fill materials into wet­lands without a permit. The partnership brought an action seeking a temporary re­straining order and declaratory judgment that the EPA lacked jurisdiction over the property because the wetlands on the prop­erty were not adjacent to any body of water.
The Fourth Circuit affirmed the district court’s dismissal of the case for lack of sub­ject matter jurisdiction. Id. at 717. In so ruling, the Southern Pines court recognized that the CWA is not the only environmental statute that allows the EPA to issue pre-­enforcement administrative orders. Id. at 716; see also Hoffman Group, 902 F.2d at 569. Both the Clean Air Act (the “CAA”), 42 U.S.C.A. §§ 7401 et seq. (West 1983 & Supp.1994), and the Comprehensive Environ­mental Response, Compensation, and Liabili­ty Act (“CERCLA”), 42 U.S.C.A. §§ 9601 et seq. (West 1983 & Supp.1994), also provide for pre-enforcement agency action. The CAA, like the CWA, provides that the EPA may issue a compliance order before bringing suit. Based on the legislative history of the CAA, courts have found that Congress in­tended to preclude judicial review of compli­ance orders issued under the CAA. See Union Elec. Co. v. Environmental Protection Agency, 593 F.2d 299, 304 (8th Cir.), cert. *1532 denied, 444 U.S. 839, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979); Lloyd A. Fry Roofing Co. v. Environmental Protection Agency, 554 F.2d 885, 891 (8th Cir.1977).
Similarly, CERCLA also allows the EPA to order that a site be cleaned up prior to bringing suit. 42 U.S.C.A. §§ 9604, 9606, 9607. Prior to 1986, courts held that pre-­enforcement remedial actions taken by the EPA under CERCLA were not subject to judicial review because litigation would inter­fere with CERCLA’s policy of prompt agen­cy response. See, e.g., Wagner Seed Co. v. Daggett, 800 F.2d 310, 315 (2d Cir.1986); Wheaton Indus. v. United States Envtl. Pro­tection Agency, 781 F.2d 354, 356-57 (3d Cir.1986); United States v. Outboard Marine Corp., 789 F.2d 497, 505-06 (7th Cir.), cert. denied, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); Barnes v. United States District Court, 800 F.2d 822, 822 (9th Cir.­1986); J.V. Peters & Co. v. EPA, 767 F.2d 263, 264-65 (6th Cir.1985). In 1986, to clari­fy its intent, Congress added a provision to CERCLA that specifically precluded federal district court jurisdiction over pre-enforce­ment remedial action. 42 U.S.C.A. § 9613(h).
Consequently, the Southern Pines court reasoned that the structure of these environ­mental statutes evinces Congress’ intent to allow the EPA to address environmental problems quickly and without becoming im­mediately entangled in litigation. Southern Pines, 912 F.2d at 716. Furthermore, the court noted that “[t]he CWA is not only similar in structure to the CAA and CERC-­LA, but its enforcement provisions were modeled after the enforcement provisions of the CAA.” Id. (citing S.Rep. No. 414, 92d Cong., 1st Sess. 63 (1971), reprinted in 1972 U.S.C.C.A.N. 3668, 3730). Hence, the court, after looking at the language, structure, ob­jectives, and history of the CWA, and after comparing it to the CAA and CERCLA, de­termined that “Congress intended to pre­clude, prior to enforcement action or imposi­tion of penalties, judicial review of compli­ance orders issued under the Clean Water Act....” Id. at 717; see also Howell v. United States, 794 F.Supp. 1072, 1075 (D.N.M.1992) (“[fjorcing the agency into liti­gation before it completes its wetlands delin­eation and permitting process will frustrate the statutory scheme that allows the agency to resolve violations in a flexible manner without judicial interference”); Leslie Salt Co. v. United States, 789 F.Supp. 1030, 1034 (N.D.Cal.1991) (“issuance of a cease and de­sist order by the Corps is not sufficient to create jurisdiction in this court”); Mulberry Hills Dev. Corp. v. United States, 772 F.Supp. 1553, 1557 (D.Md.1991) (“CWA does not allow for pre-enforcement review of cease and desist orders”); Route 26 Land Dev. Ass’n v. United States Gov’t, 753 F.Supp. 532, 540 (D.Del.1990) (declining to review Corps’ assertion of jurisdiction because “the regulatory scheme of the CWA impliedly precludes such a review.”), aff'd without opinion, 961 F.2d 1568 (3d Cir.1992); McGown v. United States, 747 F.Supp. 539, 542-43 (E.D.Mo.1990) (dismissing complaint for lack of subject matter jurisdiction pursu­ant to Southern Pines and Hoffman Group); Fiscella & Fiscella v. United States, 717 F.Supp. 1143, 1147 (E.D.Va.1989) (“the exis­tence of the Corps’ jurisdiction in the case at bar is a factual issue properly left to the expertise of the agency.... [T]he Corps should be given the initial opportunity to [determine jurisdiction] and develop a record for judicial review.”).
Recently, and in a case quite analogous to the instant one, the Seventh Circuit specifi­cally found that a district court cannot review a challenge to the EPA’s assertion of juris­diction. In Rueth v. United States Envtl. Protection Agency, 13 F.3d 227 (7th Cir.­1993), the plaintiff did not challenge a compli­ance order, but instead challenged the gov­ernment’s right to assert jurisdiction over the isolated wetlands in the plaintiffs develo­pment.[9] The Seventh Circuit affirmed the *1533 trial court’s conclusion that “ ‘if agency com­pliance orders are not reviewable until the enforcement stage, the agency’s initial deter­mination that it has the authority to either require permitting or issue orders in the absence of a permit application must also be unreviewable.’ ” Id. at 229 (quoting Rueth v. United States Envtl. Protection Agency, No. 560944, 1992 WL 560944, at *2 (N.D.Ind. Nov. 24, 1992)); see also Lotz Realty Co. v. United States, 757 F.Supp. 692, 695 (E.D.Va.­1990) (observing that “[bjeeause Southern Pines tells us that judicial review of a compli­ance order is pre-enforcement review prohib­ited by the statute, then it necessarily follows that judicial review at a stage even more preliminary is also precluded.”); McGown, 747 F.Supp. at 542 (noting that “allowing the landowner to litigate the existence of agency jurisdiction prior to the institution of enforce­ment proceedings would frustrate agency ef­forts to reach an amicable resolution of dis­putes concerning compliance with the CWA.”).
In reaching its decision, the Rueth court recounted its previous decision in Hoffman Group, 902 F.2d 567 (7th Cir.1990), and also emphasized the Fourth Circuit’s determina­tion in Southern Pines Assocs. v. United States, 912 F.2d 713 (4th Cir.1990), that the plaintiffs “ ‘can contest the existence of EPA’s jurisdiction if and when EPA seeks to enforce the penalties provided by the Act.’ ” Rueth, 13 F.3d at 230 (quoting Southern Pines, 912 F.2d at 717). Accordingly, the Rueth court explained, “[ojnce the EPA de­termines that the ... property is a wetland covered under the CWA and seeks judicial or administrative enforcement of penalties against the plaintiff, then [the plaintiff] will be entitled to his day in Court.” Id. at 230.
In the present case, this court is per­suaded by the reasoning of the Fourth and Seventh Circuits, which found that in light of the framework of the CWA’s legislative his­tory, the similarities in regulatory schemes of the CWA, the CAA, and CERCLA, the ob­jectives of the CWA, and the nature of ad­ministrative action involved, Congress meant to preclude judicial review of pre-enforce­ment proceedings under the CWA. Thus, this court has jurisdiction to review enforce­ment actions pursuant to the CWA only when the government is seeking judicial en­forcement of a compliance order or is seeking administrative penalties. Neither of these requirements has been met.[10] Accordingly, Plaintiffs’ request for injunctive and declara­tory relief at this stage of the administrative process is antithetical to Congress’ intent to allow the EPA and the Corps a non-judicial means for dealing with water pollution quick­ly and efficiently. Plaintiffs can contest the Corps’ or the EPA’s jurisdiction if and when the government seeks judicial enforcement of a compliance order or seeks administrative penalties.[11]
Despite the foregoing weight of authority, Plaintiffs nevertheless argue that Tenth Cir­cuit precedent dictates that the Corps’ juris­dictional determination is subject to immedi­ate judicial review. In so arguing, Plaintiffs rely on Riverside Irrigation Dist. v. Stipo, 658 F.2d 762 (10th Cir.1981). However, Riv­erside is completely distinguishable from the case at hand. The Tenth Circuit, in River­side, allowed judicial review of the Corps’ decision that the plaintiffs did not qualify for a nationwide permit concerning their pro­posed construction of a dam and reservoir. Id. at 767. The Corps had concluded that the completed project would adversely affect a fifty-three mile stretch of whooping crane habitat and had informed the plaintiffs that they would not qualify for a nationwide per­mit. Id.
In the instant case, Plaintiffs erroneously assert that they face “exactly the same situa­tion.” Pis.’ Resp. Mem. to Defs.’ Mot. to *1534 Dismiss at 8 (“Pis.’ Resp. Mem.”). By con­trast, however, the Corps in the present ease has not taken a final position on any pending proposal by Plaintiffs because they have not presented the Corps with any specific project proposal. Because Plaintiffs have not sought approval for a particular project, it is com­pletely speculative whether such approval would be granted or denied. Thus, there is no clear, concrete dispute to be decided as there was in Riverside.
Moreover, while a few other courts have allowed pre-enforcement review of agency actions, those courts did not specifically ad­dress whether the CWA precluded review and are therefore inapplicable to the instant case. For example, Plaintiffs cite Swanson v. United States, 600 F.Supp. 802 (D.Idaho 1985), aff'd, 789 F.2d 1368 (9th Cir.1986), for the proposition that other courts have al­lowed judicial review in Plaintiffs’ situation. Pis.’ Resp. Mem. at 10. Swanson, however, is inapposite because neither the district court, nor the Ninth Circuit in its affirmance, addressed whether the history and nature of the enforcement provisions of § 404 of the CWA demonstrate that Congress intended to preclude pre-enforcement review of compli­ance orders, which is imperative for the pres­ent inquiry. See also Bailey v. United States, 647 F.Supp. 44 (D.Idaho 1986).
Moreover, in Leslie Salt Co. v. United States 789 F.Supp. 1030, 1033 (N.D.Cal.1991) the court recognized that other litigation in the Ninth Circuit had proceeded on the as­sumption that a district court had jurisdiction over a cease and desist order, but that “the issue has not been expressly discussed by the court involved, and the Corps has not square­ly raised the issue before.” Id. at 1032. In analyzing the issue, the Leslie Salt court discerned that “[s]everal recent cases have held that the issuance of a cease and desist order by the Corps is a preliminary determi­nation of jurisdiction and of possible Clean Water Act violations, but is not a final agen­cy action reviewable by a district court.” Id. at 1033. Additionally, the court recognized that “[sjeveral cases from other circuits have held that the Clean Water Act itself pre­cludes district court review at the stage of the issuance of a cease and desist order.” Id. at 1033-34. For those reasons, the Leslie Salt court granted the government’s motion to dismiss for lack of subject matter jurisdic­tion, concluding that the issuance of a cease and desist order by the Corps is not suffi­cient to enable a district court to resolve the jurisdiction of the Act over the property. Id. at 1034.
Plaintiffs also contend that “[b]y no stretch of the imagination could the Childs’ suit be thought to meet the definition of ‘pre-en-­forcement review.’ ” Pis.’ Resp. Mem. at 10. Citing Websters’ Third New International Dictionary of the English Language, Plain­tiffs assert that “[t]he agency’s actions against [them], pursuant to § 309(a), consti­tute ‘enforcement’ in the purest sense.” Id. at 9. As set forth above, this court, has held that review of any agency action made before the agency seeks judicial enforcement of a compliance order or seeks administrative penalties constitutes impermissible pre-en-­forcement review. In this case, because the Corps has not sought judicial enforcement or administrative penalties, the Corps’ action is a “pre-enforcement” action not subject to judicial review.

B. JURISDICTION PURSUANT TO THE APA

Plaintiffs also claim that the APA, 5 U.S.C.A. § 701 et seq., provides jurisdiction for their appeal because there has been a final agency action. Section 704 of the APA provides that “[a]geney action made reviewa­ble by statute and final agency action for which there is not other adequate remedy in a court are subject to judicial review.” 5 U.S.C.A. § 704. Plaintiffs argue that the Corps’ own regulations provide that assert­ing jurisdiction is a final agency action. In support of this argument, Plaintiffs focus on the regulations concerning the Corps’ author­ity under § 404 of the CWA, which state that district engineers are authorized to “issue formal determinations concerning the appli­cability of the [CWA] ... to activities or tracts of land and the applicability of general permits or statutory exemptions to proposed activities. A determination pursuant to this authorization shall constitute a Corps final agency action.” 33 C.F.R. § 320.1(a)(6).
Yet, the Tenth Circuit, in Sierra Club v. Yeutter, 911 F.2d 1405 (10th Cir.1990), stated *1535 that “[a]n administrative decision is final when it is definitive rather than tentative, when it has a ‘direct and immediate ... effect on the day-to-day business’ of the par­ties, and when it has the ‘status of law’ and requires immediate compliance.” Id. at 1416 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 151-52, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967)) (citations omitted). Considering the Abbott factors, several courts have found that the Corps’ assertion of jurisdiction is not a final agency action for purposes of judicial review. For example, in Route 26 Land Dev. Ass’n v. United States Gov’t, 753 F.Supp. 532 (D.Del.1990), aff'd without opinion, 961 F.2d 1568 (3d Cir.1992), a case factually similar to the instant one, the plaintiffs sought review of the Corps’ assertion of jurisdiction, stating that asserting jurisdiction was a final agency action that court be reviewed by a district court. The court, however, stated that:
Although the district engineer’s assertion of jurisdiction may be a “final” agency action by virtue of 33 C.F.R. § 320.1(a)(6), this alone does not entitle Plaintiffs to pre-­enforcement review. This court is not con­vinced that the district engineer’s assertion of jurisdiction constitutes a final agency action as defined by the Supreme Court....
Id. at 539; see also Mulberry Hills Dev. Corp. v. United States, 772 F.Supp. 1553, 1558 (D.Md.1991); Fercom Aquaculture Corp. v. United States, 740 F.Supp. 736 (E.D.Mo.1990); Lotz Realty Co. v. United States, 757 F.Supp. 692, 693 (E.D.Va.1990).
As noted by the court in Route 26 the rules promulgated pursuant to § 404 to the CWA contemplate that the district engineer will have several options upon determining that someone has violated the CWA. Route 26, 753 F.Supp. at 540. For instance, after noti­fying the responsible parties, the district en­gineer may try to resolve the violation with­out adjudication by explaining to the violator what he must do to comply with the CWA. Id. The district engineer might resolve the problem by granting an after-the-fact permit, or, in some cases, the district engineer may recommend that suit be brought against the violator. Id. Therefore, the Route 26 court ruled that “the engineer’s cease and desist order, standing alone, does not constitute a final agency action. It carries no legal con­sequences for the Plaintiff and it does not determine the rights and obligations of the Plaintiff or the Corps.” Id.
Similarly, in the instant case, the Corps’ statements concerning jurisdiction have no direct impact on Plaintiffs’ conduct and do not require any immediate compliance. Fur­ther, the decision is not definitive. The Corps may grant Plaintiffs a permit to devel­op the property according to the Plaintiffs’ plan, which would make the Corps’ assertion of jurisdiction an action of minimal conse­quence. Alternatively, the Corps may de­cline to issue the permit, thus restricting Plaintiffs’ use of the Property. Although the Corps has asserted jurisdiction over the Property, the ultimate effects of that action are not yet known. Hence, this court finds that the Corps’ assertion of jurisdiction alone is not a final agency action entitling Plaintiffs to pre-enforcement review in a district court.

C. CONSTITUTIONAL CLAIMS

Finally, this court finds no merit in Plain­tiffs’ claims that the Corps failed to observe the rulemaking procedures of the APA, and that the CWA, as applied, violates the Com­merce Clause. Similarly, this court is not persuaded that the Corps has violated Plain­tiffs’ due process rights. Plaintiffs have not demonstrated that they would be denied a fair hearing before suffering a significant property loss.
In Southern Pines Assocs. v. United States, 912 F.2d 713 (4th Cir.1990), the plain­tiffs similarly argued that they had been denied due process because the Fifth Amendment, entitles them to notice and an opportunity to be heard prior to issuing a compliance order. The court noted that
[cjontrary to their claim, appellants’ fifth amendment rights are not violated because they are not subject to an injunction or penalties until EPA pursues an enforce­ment proceeding. [Appellants] will have an opportunity to make their constitutional arguments at any enforcement proceeding *1536 before they are subjected to any injunction or penalty.
Id. at 717; see also Hoffman Group, Inc. v. EPA 902 F.2d 567, 570 (7th Cir.1990).
Here, Plaintiffs would, in fact, have an opportunity to be heard through the permit process.[12] First, if Plaintiffs were to apply for a permit, it is possible that they would receive it, thus eliminating the possibility of such a loss due to the CWA. Second, if they were denied a permit, that denial would con­stitute a final order, which would be appeal-­able under the APA. Third, in the event of any actual assessment of administrative pen­alties or a judicial enforcement action under § 309(a), Plaintiffs would have an additional opportunity to challenge the EPA’s findings in the district court.
In summary, this court finds that the CWA precludes review of this pre-enforcement ac­tion, and that the Corps’ assertion of jurisdic­tion over Plaintiffs’ Property is not a final agency action reviewable by the district court. Additionally, this court finds no merit in Plaintiffs’ constitutional claims.
Accordingly, and for good cause appearing,
IT IS HEREBY ORDERED that
1. Defendants United States et al.’s Mo­tion to Dismiss is granted and Plaintiffs’ Complaint is dismissed without prejudice.
2. This is a final order concluding this action and no further order need be prepared by counsel.

. Clean Water Act, Pub.L. No. 92-500, 86 Stat. 816 (codified as amended at 33 U.S.C.A. §§ 1251 to 1387) (1986 & Supp.1994).

. Schwinn, however, advised Mr. Child to re­main aware of any changes in the nationwide permit that authorized such road, which was scheduled to expire on January 13, 1992.

. The Corps' regulations also establish several general nationwide permits, which are a type of general permit issued by the Chief of Engineers that are designed to regulate with little, if any, delay or paperwork certain activities having min­imal impacts. 33 C.F.R. § 330.1(b). A party seeking to rely on a nationwide permit is not required to file an individual permit application, but some nationwide permits require the party to provide notice to the Corps before any discharge occurs. Id. § 330.1(e).

. Under the regulations, the Corps must under­take a "public interest review” of all permit applications. In deciding whether to issue a permit, the Corps must carefully balance the “benefits which reasonably may be expected to accrue from” issuing the permits "against its reasonably foreseeable detriments.” 33 C.F.R. § 320.4(a)(1).

. If a person violates the CWA before applying for a permit, the Corps has the authority to issue a permit based on an “after-the-fact'' permit ap­plication if initial corrective measures are com­pleted. 33 C.F.R. § 326.3(e).

. "Wetlands” are "areas that are inundated or saturated by surface or ground water at a fre­quency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar ar­eas.” 33 C.F.R. § 328.3(b); 40 C.F.R. § 230.-­3(t); see also United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 124, 106 S.Ct. 455, 458, 88 L.Ed.2d 419 (1985).

. When the EPA proceeds under section 309(g), the violator is entitled to a hearing before the agency, and the public is provided with an op­portunity to comment. 33 U.S.C.A. § 1319(g)(4).

. Two types of formal notifications are described in 33 C.F.R. § 326.3(c). First, for projects that are not complete, the proper notification is "a cease and desist order prohibiting any further work pending resolution of the violation....” Id. § 326.3(c)(1). Second, "[i]f the violation in­volves a completed project, a cease and desist order should not be necessary. However, the district engineer should still notify the responsi­ble parties of the violation.” Id. § 326.3(c)(2).

. The plaintiff argued that it had no idea the wetlands on the development were "waters of the United States.” In Rueth, the court noted that the Seventh Circuit’s decision in Hoffman Homes, Inc. v. Environmental Protection Agency, 999 F.2d 256, 261 (7th Cir.1993) makes clear that "nearly all wetlands fall within the jurisdic­tion of the CWA since one test for whether the wetland affects interstate commerce is whether migratory birds use the wetland.” Rueth, 13 F.3d at 213. The Rueth court stated that "[d]eci-­sions such as Hoffman Homes give full effect to Congress'[] intent to make the Clean Water Act as far-reaching as the Commerce Clause per­mits.” Id.

. Moreover, Plaintiffs mistakenly refer to the Corps' assertion of jurisdiction as a § 309 com­pliance order. See Compl. at 6-7. Plaintiffs' reference is actually to the formal jurisdictional determination contained in the Corps’ February 1, 1991, letter. As the Rueth court emphasized, if agency compliance orders are not reviewable until the enforcement stage, the agency’s initial determination that it has the authority to either require permitting or issue orders in the absence of a permit application must also be unreview­able. See Rueth, 13 F.3d at 229.

. Additionally, if Plaintiffs were to apply for a permit and were either denied or were not satis­fied with its conditions, the Corps' decision on the permit is a final agency action, and a chal­lenge to that decision may be brought in district court. See Leslie Salt Co. v. United States, 789 F.Supp. 1030, 1033 (N.D.Cal.1991)

. Plaintiffs incorrectly argue that if this court finds that it has no subject matter jurisdiction, “unless [they] violate the CWA, [they] will never have an opportunity to challenge the federal claim of jurisdiction.” Pis.’ Resp. Mem. at 24.